FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
01/25/2021 10:10 AM
CV 2021 01 0104

**IN THE COMMON PLEAS COURT OF BUTLER COUNTY, OHIO**
**CIVIL DIVISION**

| | |
|---|---|
| **DR. LAIRY MILLER, DDS** | : Case No. _____ |
| Redacted | : |
| **West Chester, Ohio** Redacted | : Judge _____ |
| | : |
| **and** | : |
| | : |
| **DEBRA JEAN MILLER** | : |
| Redacted | : |
| **West Chester, Ohio** Redacted | : |
| | : |
| **Plaintiffs,** | : **COMPLAINT WITH JURY** |
| | : **DEMAND ENDORSED** |
| | : **HEREON** |
| -vs- | : |
| | : |
| **STANDARD INSURANCE COMPANY** | : |
| **1100 SW Sixth Ave.** | : |
| **Portland, OR 97204,** | : |
| | : |
| **and** | : |
| | : |
| **STANCORP FINANCIAL GROUP, INC.** | : |
| **1100 SW Sixth Ave.** | : |
| **Portland, OR 97204,** | : |
| | : |
| **and** | : |
| | : |
| **MINNESOTA MUTUAL LIFE INS. CO.** | : |
| **aka SECURIAN FINANCIAL GROUP** | : |
| **400 Robert Street North** | : |
| **St. Paul, MN, 55101** | : |
| | : |
| **and** | : |
| | : |
| **1100 SW Sixth Ave.** | : |
| **Portland, OR 97204,** | : |
| | : |
| **and** | : |

TIMOTHY S. CHAPPARS
Attorney at Law
_____

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

**Exhibit 2 - pg. 1 of 69**

C. KELLY HAMAD, CLU, ChFC            :
525 W. Fifth Street, Ste. 324        :
Covington, KY 41011,                 :
                                     :
        and                          :
                                     :
3230 Central Park West, Ste. 100     :
Toledo, OH 43617,                    :
                                     :
        and                          :
                                     :
FINANCIAL DESIGN GROUP LLC           :
dba "Financial Design Group"         :
c/o Statutory Agent James T. Strasser :
3230 Central Park West, Ste. 100     :
Toledo, OH 43617,                    :
                                     :
        Defendants                   :
                                     :

    *    *    *    *    *    *    *    *    *    *    *

## NATURE OF THE ACTION

1.      Plaintiffs Dr. Lairy Miller DDS and his wife Debra Jean Miller bring this
action against Defendants Standard Insurance Company, its parent corporation StanCorp
Financial Group, Inc., and Minnesota Mutual Life Insurance Company/Securian
Financial Group for breach of contract, declaratory judgment, tort of an insurer's
handling of its insured's claim in bad faith, unfair or deceptive practices, and other breach
of duties, and against financial planner Defendants C. Kelly Hamad, CLU, ChFC, and his
organization Financial Design Group LLC, for negligent misrepresentation, and against
all Defendants for breach of fiduciary duty, based on the denial of and failure to pay
benefits pursuant to the terms and conditions of certain business overhead and disability
income insurance policies provided by Defendants Standard Insurance Company and
Minnesota Mutual Life Insurance Company to their named insured Plaintiff Dr. Lairy
Miller DDS for Plaintiff's disability as a result of his total, irrecoverable, and permanent
loss of speech which mandated payment of benefits.

TIMOTHY S. CHAPPARS
Attorney at Law

————

P.O. Box 280
Xenia, Ohio 45385

Phone: (937)- 374-0077
Fax:    (937)- 374-0078

2

**Exhibit 2 - pg. 2 of 69**

**PARTIES**

2.      Plaintiffs Dr. Lairy Miller DDS and Debra Jean Miller are, and at all time relevant were, husband and wife and residents of Butler County, Ohio.  Plaintiff Dr. Lairy Miller DDS, is a dentist licensed to practice in the State of Ohio and owns and operates First Impressions Dentistry, a well-known, respected, and profitable dental practice located at 315 W. Kemper Rd., Cincinnati, OH 45246; Plaintiff Debra J. Miller is the office manager of the dental practice.

3.      (a) Defendant Standard Insurance Company (aka "The Standard") is a for-profit corporation engaged in the business of, inter alia, providing business overhead and disability income insurance with its principal place of business located at 1100 SW Sixth Ave, Portland, OR 97204 and which entered into and breached its contractual relationships with Plaintiffs in Butler County, Ohio.  All actions of Defendant Standard Insurance Company's agents and employees Patricia Parvin and Mike Dalby are imputed to Defendant Standard Insurance Company under the doctrines of respondeat superior, apparent agency, ostensible agency, and/or agency by estoppel.  Under Ohio law and pursuant to National Union Fire Insurance v. Wuerth, 122 Ohio St.3d 594 (2009), a claimant can sue the principal, agent, or both.

(b) Defendant Minnesota Mutual Life Insurance Company, now a subsidiary of Securian Financial Group, Inc. using the trademark "Securian," is a for-profit corporation engaged in the business of, inter alia, providing business overhead and disability income insurance with its principal place of business located at 400 Robert Street North, St. Paul, MN, 55101 and which entered into and breached its contractual relationships with Plaintiffs in Butler County, Ohio.  Securian and its affiliate Minnesota Life Insurance Company are now affiliated with Defendant Standard Insurance Company as a "non-Strategic Partner" whereby Defendant Standard Insurance Company services certain

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

3

**Exhibit 2 - pg. 3 of 69**

Minnesota Mutual Life Insurance Company policies, including at least two of the policies at issue in this case. As the issues involving policies initially sold by Defendant Minnesota Mutual Life Insurance Company and subsequently by Defendant Standard Insurance Company are the same, for ease of reference any allegations and claims against Defendant Standard Insurance Company shall also include allegations and claims against Defendant Minnesota Mutual Life Insurance Company, incorporated by reference, and only "Defendant Standard Insurance Company" shall be designated.

4.      At all times relevant hereto, Defendant StanCorp Financial Group, Inc. is a wholly-owned subsidiary of Japanese multi-national corporation Meiji Yasuda which purchased Defendant StanCorp Financial Group Inc. in 2016. Review of Meiji Yasuda's 2019 Annual Report emphasizes that Meiji Yasuda "is striving to seize opportunities arising from overseas market growth" and "to this end we aim to raise the proportion of profit contributed by the overseas insurance business in consolidated operating results to 15% by March 31, 2028." In particular, Meiji Yasuda is relying on StanCorp Financial Group Inc.– "Since U.S-based StanCorp Financial Group, Inc. became a wholly-owned subsidiary in March 2016, the overseas insurance business has been growing significantly"– to boost its profits. Defendant StanCorp Financial Group, Inc. is a for-profit corporation with its principal place of business located at 1100 SW Sixth Ave, Portland, OR 97204, and is the parent corporation which owned, operated, managed, and/or exercised dominion and control over Defendant Standard Insurance Company and its agents, employees, and affiliates. Pursuant to Ohio law, specifically Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., Inc., 67 Ohio St. 3d 274 (1993), as modified by Dombroski v. WellPoint Inc., 119 Ohio St.3d 506, 2008-Ohio-4827 (2008), Defendant StanCorp Financial Group, Inc. exercised control over Defendant Standard Insurance Company such that Defendant Standard Insurance Company had no

**TIMOTHY S. CHAPPARS**
Attorney at Law

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

4

**Exhibit 2 - pg. 4 of 69**

separate mind, will, or existence of its own, and accordingly Defendant StanCorp Financial Group, Inc. is vicariously liable for the actions of Defendant Standard Insurance Company and its agents, employees, and affiliates. Further, Defendant StanCorp Financial Group, Inc. has liability for Plaintiffs' damages set forth in Plaintiffs' Fifth Claim for Relief, infra, for the breach of independently owed duties to Plaintiffs in matters such as, but without limitation, failing to promulgate and enforce appropriate policies and procedures; failing to hire, retain, train, and supervise personnel within appropriate standards; and failing to promulgate appropriate policies, guidelines, and standards for considering and reviewing claims for business overhead and disability income insurance.

5. At all times relevant hereto, Defendant C. Kelly Hamad, CLU, ChFC is a financial advisor operating under the promotion, advertising, and other auspices of Defendant Financial Design Group LLC with his office located at 525 W. Fifth Street, Ste. 324, Covington, KY 41011, and while in the course and scope of his business, employment, and/or agency relationship with Defendant Financial Design Group LLC, took actions and made representations upon which Plaintiffs reasonably relied in the sale and maintenance of business overhead and disability insurance policies from Defendant Standard Insurance Company. Defendant C. Kelly Hamad, CLU, ChFC owed fiduciary and first party duties to Plaintiffs.

6. At all times relevant hereto, Defendant Financial Design Group LLC is a limited liability company engaged in the business of financial planning, including the sale of individual disability income and business overhead expense insurance; licensed in the State of Ohio, Entity No. 1742870, with its principal place of business located at 3230 Central Park West, Ste. 100, Toledo, OH 43617, using the registered trade name "Financial Design Group"; and is the organization which promoted, advertised, and

**TIMOTHY S. CHAPPARS**
Attorney at Law

———

P.O. Box 280
Xenia, Ohio 45385

Phone: (937)- 374-0077
Fax: (937)- 374-0078

5

**Exhibit 2 - pg. 5 of 69**

otherwise exercised dominion and control over its various agents and employees in general and Defendant C. Kelly Hamad, CLU, ChFC in specific. All actions and representations of Defendant C. Kelly Hamad, CLU, ChFC are imputed to Defendant Financial Design Group LLC under the doctrines of <u>respondeat superior</u>, apparent agency, ostensible agency, and/or agency by estoppel. Defendant Financial Design Group LLC owed fiduciary and first party duties to Plaintiffs and, in addition to vicarious liability, is liable for Plaintiffs' compensatory and punitive damages for its independent acts and/or omissions, as detailed <u>infra</u>.

## JURISDICTION AND VENUE

7.      Defendants are subject to the jurisdiction of this Court and venue is proper in the Butler County Court of Common Pleas pursuant to Rule 3(B)(3) of the Ohio Rules of Civil Procedure by virtue of one or more Defendants conducting activity, including engaging in communications orally, by telephone, by e-mail, and/or by written correspondence, breaching contractual obligations, and otherwise engaging in activity giving rise to one or more claims for relief in Butler County, Ohio. A breach of contract claim arises in the county where money is to be paid. See, e.g., <u>Kniess v. Bob Roark Floor Coverings</u>, 1996 Ohio App. Lexis 5354 (2nd Dist. C.A. 1996), stating at p. 4: "In an action alleging breach of contract, the cause of action arises where the breach took place. * * * Various jurisdictions have held that the refusal to pay money due on a contract results in a breach of that contract <u>at the place where the money was to be paid</u>... [internal citations omitted]." [Emphasis added.] Since the insurance benefits at issue were to have been paid in Butler County, Ohio, the Butler County Court of Common Pleas is an appropriate venue for this case. Further, as the insurance policies at issue involve individual, as opposed to group, policies and thus not governed by ERISA, jurisdiction in state court is appropriate.

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

6

Exhibit 2 - pg. 6 of 69

## BACKGROUND FACTS

8.     Beginning in the early 1990s, Plaintiffs entered into financial planning discussions with Defendant C. Kelly Hamad, CLU, ChFC, agent of Defendant Financial Design Group LLC, in which said Defendants as part of overall financial planning persuaded Plaintiffs of the advisability and need to procure disability income and business overhead insurance coverage in the event Plaintiff Dr. Lairy Miller DDS became disabled during his dental career.  During said discussions, Defendant C. Kelly Hamad, CLU, ChFC, on behalf of Defendant Financial Design Group LLC and as part of an overall financial plan, made representations that any insurance he intended to sell as part of his financial planning services would be from a reputable, reliable company that would honor the terms and conditions of its insurance policies.   On reliance of said representations, Plaintiffs agreed to purchase a disability income policy, Policy No. 1-977-912H, effective October 2, 1993, and a business overhead expense policy, Policy No. 1-977-909H, effective October 2, 1993 from Defendant Standard Insurance Company's now-affiliate, Defendant Minnesota Mutual Life Insurance Company (again, policies now serviced by Defendant Standard Insurance Company).   While the complete policies, as well as other policies at issue in this case, are too voluminous to be attached to this Complaint, copies of the dec pages specifying premiums and benefits as well as relevant policy language, specifically the definition of "presumptive total disability as a result of the total and permanent loss of speech," at issue in this case are attached to this Complaint as Plaintiffs' Exhibit "A."

9.     Subsequently, over the years Plaintiffs continued to purchase multiple individual disability income and business overhead expense policies from Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC, such that all policies at issue in this case are as follows: Business Overhead Expense Policies: H1977909,

**TIMOTHY S. CHAPPARS**
**Attorney at Law**

P.O. Box 280
Xenia, Ohio 45385

Phone:   (937)- 374-0077
Fax:      (937)- 374-0078

7

**Exhibit 2 - pg. 7 of 69**

H2033124, and C9320490; Disability Income Policies: H1977912, C7779320, and C9320480 (again, dec pages attached as Plaintiffs Exhibit "A").  All said policies essentially provided for the payment of specified monthly benefits in the event Plaintiff suffered a period of disability prior to age 65 due to sickness or injury which extends beyond a waiting period.  The policies also provided that a policy holder in general and Plaintiff Dr. Lairy Miller DDS in specific would be presumed disabled regardless of income if, while the policies are in force, the individual suffered the "total and irrecoverable loss of speech [some of the policies at issue utilized the functionally equivalent phrase "total and permanent"]."  The policies did not define "total and irrecoverable" loss of speech, even though other qualifying presumptive disability conditions, such as loss of sight, were defined in some of the policies.  The policies further specified that benefits would start when the loss occurred, even if the waiting period had not expired, and that premiums would be waived when the disability began. The sale and renewal of the various policies generated substantial fees and commissions for Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC and required the exercise of appropriate duties owed to Plaintiffs in the initial sales of the policies and their renewals over the years, continuing to the present date.

10.    Plaintiffs have fulfilled all conditions required under the terms of the policies, including, but not limited to, cooperating with Defendant Standard Insurance Company, timely paying substantial premiums since 1993 and continuing to the present date in excess of $301,695.27, providing timely notice of loss, and supporting their claims for benefits under the policies by substantial, irrefutable medical evidence from multiple treating medical practitioners demonstrating that Plaintiff Dr. Lairy Miller DDS in fact has suffered "a total and irrecoverable loss of speech."

**TIMOTHY S. CHAPPARS**
**Attorney at Law**

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

**Exhibit 2 - pg. 8 of 69**

11.     On or about February 28, 2020 during a three-way phone call among Plaintiff Debra Jean Miller as POA for her husband Plaintiff Dr. Lairy Miller DDS, Defendant C. Kelly Hamad, CLU, ChFC, and a representative of Defendant Standard Insurance Company, Plaintiff Debra Jean Miller notified Defendant Standard Insurance Company that as a result of her husband's progressively deteriorating neurological condition resulting in total and irrecoverable loss of speech, Plaintiffs were making claims for benefits under the six policies at issue.   Defendant Standard Insurance Company acknowledged the claim in writing.  See communication dated 2/28/20 from Defendant Standard Insurance Company attached hereto as Plaintiffs' Exhibit "B." Plaintiffs then submitted a written application with supporting documentation for benefits based on Plaintiff Dr. Lairy Miller DDS's presumptive disability for the total and irrecoverable loss of speech, but despite this evidence, Defendant Standard Insurance Company determined that Plaintiffs were not entitled to benefits.  See denial letter dated April 13, 2020, attached hereto as Plaintiffs' Exhibit "C."  Accordingly, Plaintiffs on April 27, 2020 submitted a written appeal, Plaintiffs' Exhibit "D," of Defendant Standard Insurance Company's initial denial of benefits and included, inter alia, reports from three treating medical practitioners, Drs. Weisenberger, Shatz, and Bhat, further documenting that Plaintiff Dr. Lairy Miller DDS had suffered total and irrecoverable loss of speech, a critical skill for a dentist in order to communicate with his patients and perform his job. Despite the abundance of evidence, on May 21, 2020 Defendant Standard Insurance Company through its agent and employee Patricia Parvin issued a written decision, attached hereto as Plaintiffs' Exhibit "E," affirming the previous denial of benefits for the presumptive disability claims, even though Defendant Standard Insurance Company acknowledged that Plaintiff Dr. Lairy Miller DDS had advanced Alzheimer's disease, chronic lymphocytic leukemia, significant cognitive impairment such that he was unable

**TIMOTHY S. CHAPPARS**
Attorney at Law

———

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:       (937)- 374-0078

9

**Exhibit 2 - pg. 9 of 69**

to name objects, and had sentences or thoughts that were incoherent; Defendant Standard Insurance Company based its decision simply on the fact that despite Plaintiff Dr. Lairy Miller DDS's cognitive dysfunction, he was able to vocalize and consequently did not suffer from "total and irrecoverable/permanent loss of speech."

12.     Pursuant to Defendant Standard Insurance Company's stated appeals process, on or about July 16, 2020 Plaintiffs, now through counsel, timely appealed the 5/21/20 adverse determinations, specifying:

> The basis for Dr. Miller's appeal of The Standard's adverse determination as to presumptive disability and hence denial of benefits is that in point of fact Dr. Miller has in fact suffered the "total and irrecoverable loss of speech" as specified as a condition in some of the policies and "total and permanent loss of speech" as specified as a condition in others, a prerequisite for payment of disability benefits.

The appeal emphasized the ambiguity in the phrase: "total and irrecoverable loss of speech" and was supported with, inter alia, copious medical documentation including reports and records. See Plaintiffs' counsel's appeal letter dated 7/16/20 without enclosures, attached hereto as Plaintiffs' Exhibit "F." Subsequently, on or about August 6, 2020, Plaintiffs through counsel supplemented their appeal with a new report of a recent evaluation from an expert certified speech and language pathologist, transmittal confirmed by e-mail dated 8/6/20, attached hereto as Plaintiffs' Exhibit "G." The report documented significant deficits in Plaintiff Dr. Lairy Miller DDS's motor speech, expressive language, receptive language, and cognitive communication, and concluded: "The severity of Dr. Miller's communication impairments restricts the extent and manner of his participation in social and community activities, and is incompatible with employment activities requiring verbal communication with staff and patients." This report is not being attached to this Complaint given its length but will be produced in discovery pursuant to an appropriate protective order. Receipt of the expert speech

10

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

Exhibit 2 - pg. 10 of 69

pathologist's report was acknowledged on August 13, 2020 by Defendant Standard Insurance Company's agent and employee Mike Dalby in the Administrative Review Unit.

13.    After lengthy delay, on or about September 14, 2020, Defendant Standard Insurance Company through agent and employee Mike Dalby upheld Defendant Standard Insurance Company's previous decisions to deny benefits to Plaintiffs.  See decision attached hereto as Plaintiffs' Exhibit "H."  Despite unrebutted medical evidence and acknowledging that Defendant Standard Insurance Company's policies "do not provide additional context in relation to 'total and permanent' with regards to Speech," i.e., acknowledging ambiguity in the term "total and permanent loss of speech," Defendant Standard Insurance Company did not change positions; the reviewer specifically stated: "It should also be noted that I did not find it necessary to utilize a Physician Consultant as part of my review.  I believe the case file makes clear Dr. Miller's impairment and this evaluation, rather than being of a dispute medically, is instead contractual." * * * "I do not see any reason to disagree with [the speech pathologist's] report overall.  Dr. Miller is clearly dealing with a very severe and unfortunate combination of conditions that have drastically impacted his ability to function as he did prior to disability.  The Standard has accepted that Dr. Miller is unable to work in his profession…."  Yet despite these findings acknowledging that Plaintiff Dr. Lairy Miller DDS's career was finished due to disability for loss of speech, Defendant Standard Insurance Company persisted in its denial of benefits to the financial detriment of Plaintiffs and its attendant hardship.

### FIRST CLAIM FOR RELIEF: Breach of Contract

14.    Plaintiffs repeat the allegations previously set forth herein and incorporate the same by reference.

TIMOTHY S. CHAPPARS
Attorney at Law

———

P.O. Box 280
Xenia, Ohio  45385

Phone:   (937)- 374-0077
Fax:       (937)- 374-0078

11

**Exhibit 2 - pg. 11 of 69**

15.     Plaintiff Dr. Lairy Miller DDS is the named insured in individual disability income and business overhead policies of insurance issued by Defendants Standard Insurance Company and Minnesota Mutual Life Insurance Company in Business Overhead Expense Policies: H1977909, H2033124, and C9320490; Disability Income Policies: H1977912, C7779320, and C9320480, effective on the date when Plaintiff Dr. Lairy Miller DDS became presumptively disabled for total and irrecoverable loss of speech. Plaintiffs have fulfilled all conditions required under the terms of the policies, including, but not limited to, cooperating with Defendant Standard Insurance Company, timely paying substantial premiums for over 26 years, furnishing copious documentation of the qualifying condition to be entitled to benefits, and providing timely notice of loss.

16.     The course of conduct of Defendant Standard Insurance Company as documented herein through its unresponsiveness, pattern of delay, and resistance to paying contractual benefits, particularly as Defendant Standard Insurance Company knew or should have known that Plaintiffs would encounter difficulty maintaining their dental practice in light of Plaintiff Dr. Lairy Miller DDS's disability and with the prospect of a forced sale of the practice such that overhead expenses would no longer be incurred, constitutes a negligent, reckless, willful and wanton, and malicious material breach of contract.

17.     Plaintiffs are entitled to individual disability income and business overhead expense benefits on their claims to the extent of limits of said policies with Defendant Standard Insurance Company (and its non-strategic partner Defendant Minnesota Mutual Life Insurance Company); have timely demanded same; but Defendant Standard Insurance Company has negligently, recklessly, willfully and wantonly, and maliciously not paid benefits to which Plaintiffs are entitled, consisting of full benefits

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

12

**Exhibit 2 - pg. 12 of 69**

under the business overhead expense policies in the amount of $1,040,765.00 and partial benefits under the individual disability income policies in an ongoing amount that will be timely supplemented prior to trial, for total benefits due under the policies in excess of $1,040,765.00.

18.     As a proximate result of Defendant Standard Insurance Company's (and its non-strategic partner Defendant Minnesota Mutual Life Insurance Company's) negligent, reckless, willful and wanton, and malicious breach of contract, Plaintiffs have been damaged in the sum of at least $1,040,765.00, the exact amount to be provided upon timely amendment to this pleading, for which judgment is demanded, as well as interest on breach of contract claims pursuant to O.R.C. §1343.03(A).

<u>**SECOND CLAIM FOR RELIEF: Declaratory Judgment**</u>

19.     Plaintiffs repeat the allegations previously set forth herein and incorporate the same by reference.

20.     Pursuant to O.R.C. §2721.01 et seq., Plaintiffs are entitled to a declaratory judgment that Plaintiffs are entitled to contractual benefits under the Standard Insurance Company/Minnesota Mutual Life Insurance Company policies at issue and that Defendants Standard Insurance Company/Minnesota Mutual Life Insurance Company have been unjustly enriched in the amount of at least $301,695.27 for which Plaintiffs are entitled to reimbursement.

<u>**THIRD CLAIM FOR RELIEF: Tort of an Insurer's Bad Faith in handling an Insured's claim**</u>

21.     Plaintiffs repeat the allegations previously set forth herein and incorporate the same by reference.

22.     Defendant Standard Insurance Company at all times material hereto had, and continues to have, a duty to handle in good faith Plaintiffs' claims for benefits to which Plaintiffs are entitled contained in policies for which Plaintiffs have paid premiums

**TIMOTHY S. CHAPPARS**
**Attorney at Law**

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

13

**Exhibit 2 - pg. 13 of 69**

for over 26 years, pursuant to <u>Kehoe v. Lightning Rod Mutual Insurance Company</u>, 115 Ohio App.3d 234 (8th Dist. C.A. 1996) (holding twenty-five years ago that Lightning Rod Mutual Insurance Company's unjustified delay in paying an undisputed portion of a claim is evidence of bad faith) and <u>Toman v. State Farm Mutual Automobile Insurance Company</u>, 2015-Ohio-3351 (8th Dist. C.A. 2015), which more recently summarizes Ohio law regarding the duties of an insurer on a first party claim as follows:

> An insurer has a duty to act in good faith in the handling and payment of an insured's claim. Hoskins v. Aetna Life Ins. Co., 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph one of the syllabus. An insurer must "assess claims after an appropriate and careful investigation" and reach its conclusions as a result of the "weighing of probabilities in a fair and honest way." Motorists Mut. Ins. Co. v. Said, 63 Ohio St.3d 690, 699, 590 N.E.2d 1228 (1992). A breach of this duty gives rise to a cause of action by the insured for bad faith. {¶29} An insurer acts in bad faith when it refuses to pay a claim without "reasonable justification." Zoppo v. Homestead Ins. Co., 71 Ohio St.3d 552, 644 N.E.2d 397 (1995), paragraph one of the syllabus ("An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefore."). However, bad faith claims are not limited to "scenarios involving an outright denial of payment for a claim." Drouard v. United Servs. Auto. Assn., 6th Dist. Lucas No. L-06-1275, 2007-Ohio-1049, ¶ 16. A bad faith claim can also arise from an insurer's "foot-dragging" in the handling or evaluation of a claim (even if a claim is ultimately paid), id., an unreasonably low settlement offer, Mundy v. Roy, 2d Dist. Clark No. 2005-CA-28, 2006-Ohio-993, ¶ 21, or if the record otherwise shows that there were "'no circumstances in the case that created a reasonable justification for the insurer's actions.'" TOL Aviation, Inc. v. Intercargo Ins. Co., 6th Dist. Lucas Nos. L-05-1308 and L-06-1050, 2006-Ohio-6061, ¶ 64, quoting Bennett v. Butler, 6th Dist. Lucas No. L-99-1151, 2000 Ohio App. LEXIS 2891, *19 (June 30, 2000). "'An insurer lacks reasonable justification when it acts in an arbitrary or capricious manner'" with respect to insured's claim. Gerken v. State Auto Ins. Co., 4th Dist. Washington No. 13CA14, 2014-Ohio-4428, ¶ 48, quoting Captain v. United Ohio Ins. Co., 4th Dist. Highland No. 09CA14, 2010-Ohio-

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio 45385

Phone: (937)- 374-0077
Fax:    (937)- 374-0078

**Exhibit 2 - pg. 14 of 69**

2691, ¶ 30; Hoskins, 6 Ohio St.3d at 277, 452 N.E.2d 1315.

23.     Although Plaintiffs are not necessarily required to apply the heightened pleading standards of <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), but in a good faith effort to comply with Rule 9(B) of the Ohio Rules of Civil Procedure and without the benefit of full discovery, Plaintiffs state that Defendants Standard Insurance Company/Minnesota Mutual Life Insurance Company issued individual disability income and business overhead policies of insurance in Business Overhead Expense Policies: H1977909, H2033124, and C9320490, and Disability Income Policies: H1977912, C7779320, and C9320480.     Thereafter, as previously detailed in ¶¶ 9 – 14 and incorporated herein, Defendant Standard Insurance Company initially denied without reasonable justification Plaintiffs' claims for benefits under the subject policies and then engaged in a pattern of unresponsiveness, delay, and resistance to paying policy benefits, improperly construing against Plaintiffs any claimed ambiguities in the phrase "total and irrecoverable loss of speech" in violation of <u>King v. Nationwide Ins. Co.</u>, 35 Ohio St.3d 208 (1988), which held in the syllabus: "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured," and otherwise utilizing pretextual reasons to avoid paying benefits under the subject policies.   The denial of Plaintiffs' proper claims for benefits under the subject policies is part of a long-standing practice of Defendant Standard Insurance Company denying disability claims, forcing claimants to litigate those claims causing unnecessary delay and expense to obtain benefits which should have been paid pursuant to contract. Review of publicly-available information, including documentation on PACER for federal court cases both in the Southern District of Ohio as well as nationwide, is

**TIMOTHY S. CHAPPARS**
Attorney at Law

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

15

**Exhibit 2 - pg. 15 of 69**

illustrative of Defendant Standard Insurance Company's practices of wrongfully denying claims prompting litigation.

24. The actions of Defendant Standard Insurance Company as previously set forth herein constitute a negligent, reckless, willful and wanton, and malicious breach of Defendant Standard Insurance Company's duty to handle its insured's claim in good faith, entitling Plaintiffs to compensatory damages, punitive damages, and attorney's fees and expenses. See discussion in LeForge v. Nationwide Mutual Fire Ins. Co., 82 Ohio App.3d 692 (Clinton Co. 1992), in which the Twelfth District Court of Appeals specifically authorized in a bad faith claim the recovery of extra-contractual damages for mental anguish and inconvenience resulting from matters such as financial problems caused by denial of benefits.

**FOURTH CLAIM FOR RELIEF: Unfair or Deceptive Practices in the Business of Insurance**

25. Plaintiffs repeat the allegations previously set forth herein and incorporate the same by reference.

26. State law, and specifically Ohio Administrative Code §3901-1-07 promulgated pursuant to Ohio statutory law, provides in pertinent part: "Sections 3901.20 and 3901.21 of the [Ohio] Revised Code respectively prohibit unfair or deceptive practices in the business of insurance and define certain acts or practices as unfair or deceptive." Specifically, and without limitation, OAC §3901-1-07(C)(6) and (7) prohibit not offering first party claimants or their authorized representatives who have made claims amounts which are fair and reasonable, plus compelling insureds to institute suits to recover amounts due under its policies.

**TIMOTHY S. CHAPPARS**
**Attorney at Law**

P.O. Box 280
Xenia, Ohio 45385

Phone: (937)- 374-0077
Fax: (937)- 374-0078

16

**Exhibit 2 - pg. 16 of 69**

27.     The actions of Defendant Standard Insurance Company as set forth herein constitute an unfair or deceptive practice entitling Plaintiffs to remedies set forth by law.

### FIFTH CLAIM FOR RELIEF: Liability of Parent Corporation

28.     Plaintiffs repeat the allegations previously set forth herein and incorporate the same by reference.

29.     Defendant StanCorp Financial Group, Inc. is the parent corporation which exercised complete dominion and control over its subsidiary Defendant Standard Insurance Company and its agents and employees, including Patricia Parvin and Mike Dalby, and affiliates, and by reason thereof owed duties to Plaintiffs in its administrative, management, and standard-making functions.     Specifically, Defendant StanCorp Financial Group, Inc. owed duties in matters such as, but without limitation, promulgating and enforcing appropriate policies and procedures; hiring, retaining, training, and supervising personnel within appropriate standards; and promulgating appropriate policies, guidelines, and standards for considering and reviewing claims for individual disability income and business overhead expense insurance.

30.     Particularly in view of the need to report profitability to its foreign owner, Defendant StanCorp Financial Group, Inc. negligently, recklessly, willfully and wantonly, and maliciously breached its corporate duties to Plaintiffs in its exercise of its dominion and control over its subsidiary to commit fraud, wrong, or other dishonest or unjust acts, proximately causing injury or unjust loss to Plaintiffs from such control over its subsidiary and wrong-doing.

### SIXTH CLAIM FOR RELIEF: Negligent Misrepresentation

31.     Plaintiffs repeat the allegations previously set forth herein and incorporate the same by reference.

**TIMOTHY S. CHAPPARS**
**Attorney at Law**

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

**Exhibit 2 - pg. 17 of 69**

32.     Defendant Financial Design Group LLC is the organization which promoted, advertised, and otherwise exercised dominion and control over its various agents and employees in general and Defendant C. Kelly Hamad in specific. All actions of Defendant C. Kelly Hamad, CLU, ChFC are imputed to Defendant Financial Design Group LLC under the doctrines of respondeat superior, apparent agency, ostensible agency, and/or agency by estoppel. Further, Defendant Financial Design Group LLC is liable for Plaintiffs' compensatory and punitive damages for its independent acts and/or omissions, as detailed infra.

33.     Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC, as part of overall financial and lifestyle planning which by necessity required a relationship, financial and otherwise, built on trust, advised and recommended to Plaintiffs that they purchase individual disability income and business overhead expense insurance for Plaintiffs' protection in the event Plaintiff Dr. Lairy Miller DDS became disabled during the course of his dental career, touting the benefits of the insurance to provide financial security in the event Plaintiff Dr. Lairy Miller DDS could no longer work in his chosen career. Further, Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC specifically recommended that the insurance should be purchased by Plaintiffs, initially from Defendant Minnesota Mutual Life Insurance Company and subsequently from Defendant Standard Insurance Company, further representing that those companies were reliable and the type of companies to provide benefits in the event Plaintiff Dr. Lairy Miller DDS became disabled, even though Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC knew or should have known that Defendant Standard Insurance Company had been involved in extensive litigation for the improper denial of disability benefits. Further, over time as Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC knew or

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio 45385

Phone: (937)- 374-0077
Fax:     (937)- 374-0078

18

**Exhibit 2 - pg. 18 of 69**

should have known of the questionable and unreliable claims-handling practices of Defendant Standard Insurance Company, Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC never made Plaintiffs aware of any concerns nor recommended that the insurance from Defendant Standard Insurance Company be reconsidered and/or the insurance placed with a more reliable company. On reliance of all representations that induced Plaintiffs to purchase the six policies at issue, Plaintiffs in fact purchased the subject policies and have maintained the insurance by paying substantial premiums over the course of over 26 years.

34. Relevant Ohio law regarding negligent misrepresentation is set forth in Levy v. Seiber, 2016-Ohio-68 (12th Dist. C.A. 1/11/16):

> [¶36] * * * One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. [57 N.E.3d 340] Delman v. Cleveland Heights, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989); N. Am. Herb & Spice Co., LTD, LLC v. Appleton, 12th Dist. Butler No. CA2010-02-034, 2010-Ohio-4406, ¶ 34.

> *    *    *

> [¶37] The Eighth District has summarized the elements of negligent misrepresentation as requiring " (1) a defendant who is in the business of supplying information; and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant." Hamilton v. Sysco Food Servs. Of Cleveland Inc., 170 Ohio App.3d 203, 2006-Ohio-6419, ¶ 20, 866 N.E.2d 559 (8th Dist.), quoting Nichols v. Ryder Truck Rentals, Inc., 8th Dist. Cuyahoga No. 65376, 1994 WL 285000, *4 (June 23, 1994). The class of persons who are in the business of supplying information to others is limited to certain professionals, such as " attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks." Id. at ¶ 21. The claim also

**TIMOTHY S. CHAPPARS**
Attorney at Law

P.O. Box 280
Xenia, Ohio 45385

Phone: (937)- 374-0077
Fax: (937)- 374-0078

19

Exhibit 2 - pg. 19 of 69

> requires that a plaintiff seek guidance with respect to the business transaction, such as when there is a special relationship between the parties and the plaintiff specifically relies upon the defendant for advice. McNabb v. Hoeppner, 5th Dist. Richland No. 10CA124, 2011-Ohio-3224, ¶ 21-22.

35.     The representations made by Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC in their professional dealings with Plaintiffs, including the representations that benefits would be provided in the event Plaintiff Dr. Lairy Miller DDS became disabled and that the companies which provided the insurance were reliable and trustworthy and would honor their contractual obligations, were false, upon which Plaintiffs reasonably relied in making the decision to purchase and maintain the insurance recommended by Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC. Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC were in the business of supplying information regarding the advisability of purchasing and maintaining individual disability income and business overhead expense insurance; Plaintiffs sought guidance regarding the purchase and maintaining of insurance from Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC; Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC are in the class of professionals supplying information to others; and Plaintiffs specifically relied upon Defendants for advice in the purchase of insurance from Defendants Minnesota Mutual Life Insurance Company and Standard Insurance Company.

36.     As a proximate result of the negligent misrepresentations made by Defendants C. Kelly Hamad, CLU, ChFC and Financial Design Group LLC, Plaintiffs have sustained damages for the loss of benefits which should have been provided under the policies at issue in the sum of at least $1,040,765.00, the exact amount to be provided upon timely amendment to this pleading, for which judgment is demanded, as well as interest on contracts pursuant to O.R.C. §1343.03(A).

20

**TIMOTHY S. CHAPPARS**
**Attorney at Law**

P.O. Box 280
Xenia, Ohio 45385

Phone: (937)- 374-0077
Fax:      (937)- 374-0078

**Exhibit 2 - pg. 20 of 69**

**SEVENTH CLAIM FOR RELIEF: Breach of Fiduciary Duty**

37.     Plaintiffs repeat the allegations previously set forth herein and incorporate the same by reference.

38.     Under Ohio law, Defendants Standard Insurance Company, C. Kelly Hamad, and Financial Design Group LLC owed fiduciary duties to Plaintiffs in the advising, selling, and renewal of policies of individual disability income and business overhead expense insurance. See, e.g., Hanick v. Ferrara, 2020-Ohio-5019 (7th Dist. C.A. 9/28/20).

39.     Defendants Standard Insurance Company, C. Kelly Hamad, and Financial Design Group, LLC breached their fiduciary duties owed to Plaintiffs in the failure to provide benefits contained in individual disability income and business overhead expense insurance purchased by Plaintiffs, proximately causing damages to Plaintiffs as previously set forth herein.

**EIGHTH CLAIM FOR RELIEF: Intentional or Reckless Infliction of Serious Emotional Distress**

40.     Plaintiffs repeat the allegations previously set forth herein and incorporate the same by reference.

41.     As acknowledged by Defendant Standard Insurance Company, Plaintiff Dr. Lairy Miller DDS is now disabled for multiple serious neurological and other medical conditions such that Plaintiff Dr. Lairy Miller DDS has suffered a total and irreversible loss of speech needed to perform as a dentist; as stated by Defendant Standard Insurance Company agent and employee Mike Dalby, "The Standard has accepted that Dr. Miller is unable to work in his profession." Plaintiff Dr. Lairy Miller DDS's neurological and other medical conditions make him particularly vulnerable to emotional distress brought on by financial hardship attributable to the improper denial of benefits; Plaintiff Debra Jean Miller has been a long-time supportive spouse, working in the dental practice as

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio 45385

Phone: (937)- 374-0077
Fax:    (937)- 374-0078

21

**Exhibit 2 - pg. 21 of 69**

office manager, and has also experienced emotional distress over the financial hardship brought about by Defendant Standard Insurance Company's improper denial of benefits, particularly given the ages of Plaintiffs as they approach the conclusion of their working careers and having to use career-long savings which had been put aside for retirement, instead now having to be used for office overhead and other expenses which would not have had to have been used but for the improper denial of disability benefits.

42.     Pursuant to <u>Yeager v. Local Union 20</u>, 6 Ohio St. 3d 369 (Ohio 1983), Defendant Standard Insurance Company by its intentional and/or reckless actions in the persistent denial of contractual benefits, and the refusal to change positions when provided with additional information and in the absence of contrary evidence, as part of an overall corporate-wide practice of denying disability benefits and forcing claimants into litigation to enhance profitability to ultimately benefit its foreign parent corporation, has inflicted serious emotional distress on Plaintiffs, proximately causing harm for emotional distress to be more fully established at trial.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants, jointly and severally, in a sum in excess of Twenty-Five Thousand Dollars ($25,000.00) compensatory damages, the exact amount of which will be specified upon timely amendment to this pleading; punitive damages; reasonable attorney's fees; pre-judgment and post-judgment interest as provided by law; court costs expended herein; a declaration that Plaintiffs are entitled to benefits under the subject policies, that Defendants Standard Insurance Company and Minnesota Mutual Life Insurance Company have breached the subject contracts by its failure to pay contractual benefits, and that Defendants Standard Insurance Company and Minnesota Mutual Life Insurance Company have been unjustly

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

22

**Exhibit 2 - pg. 22 of 69**

enriched for retention of premiums despite failing to pay benefits and for which Plaintiffs are entitled to reimbursement; and such other relief as is just and proper under the circumstances.

TIMOTHY S. CHAPPARS  #0007122
ATTORNEY FOR PLAINTIFFS
CHAPPARS LAW OFFICE
P.O. Box 280
Xenia, OH 45385
Telephone: (937)-374-0077
Fax: (937)-374-0078
E-mail: chapparslaw@aol.com

DAVID T. DAVIDSON #00370035
ATTORNEY FOR PLAINTIFFS
DAVIDSON LAW OFFICES CO. LPA
2 S. 3rd St., Ste. 301
Hamilton, OH 45011
Telephone: (513)-868-7100
Fax: (513)-330-6969
E-mail: ddavidson@davidsonlaw.org

## JURY DEMAND

Plaintiffs demand a trial by jury.

TIMOTHY S. CHAPPARS  #0007122

DAVID T. DAVIDSON #00370035
ATTORNEYS FOR PLAINTIFFS

TIMOTHY S. CHAPPARS
Attorney at Law

P.O. Box 280
Xenia, Ohio  45385

Phone:  (937)- 374-0077
Fax:      (937)- 374-0078

23

**Exhibit 2 - pg. 23 of 69**

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURT
04/25/2021 10:10 A
CV 2021 01 0104



"A"

Exhibit 2 - pg. 24 of 69

(Page 1 of 7)

## General Definitions

When we use the following words, this is what we mean:

**you, your**

The person who is insured under this policy as shown on page 1. The insured is also the owner of this policy, unless otherwise provided for in this policy.

**we, our, us**

The Minnesota Mutual Life Insurance Company.

**policy date**

The effective date of coverage under this policy and the date from which policy anniversaries, policy years, policy months and premium due dates are determined. The policy date is shown on page 1.

**policy anniversary**

The same day and month in each succeeding year as the policy date.

**age 65**

The policy anniversary on or following your 65th birthday.

**injury**

An accidental bodily injury you sustain while this policy is in force.

**sickness**

A disease or illness which first manifests itself while this policy is in force. A disease or illness first manifests itself when symptoms exist that would cause an ordinarily prudent person to seek diagnosis, care or treatment, or when a physician recommends or provides medical advice or treatment.

**physician**

A licensed physician, other than you or the owner.

**prior average overhead expenses**

The monthly average of your overhead expenses for the 12 month period, or the preceding 24 months if higher, immediately prior to the onset of your disability.

**waiting period**

The number of days, as shown on page 1, at the beginning of each period of disability for which no monthly overhead benefit will be paid.

**monthly overhead benefit**

The basic amount payable for covered overhead expenses, as shown on page 1, for each complete month of disability after the waiting period. If your policy has a

Cost of Living Agreement, this basic amount may increase.

**maximum aggregate overhead benefit**

The maximum amount payable under this policy or under any agreement attached to this policy, for any one continuous period of disability. The amount of the maximum aggregate overhead benefit is shown on page 1.

## Definition of Disability

**What is the definition of disability?**

Whenever we use the words "disability" or "disabled" in this policy, we mean a sickness or injury which:

(1) requires the reasonable and customary care of a physician; and

(2) results in your inability to perform the substantial and material duties of your regular occupation, as defined further in this section.

You will be considered unable to perform the substantial and material duties of your regular occupation if, due to your disability, your gross earnings from your regular occupation are 50% or less of your prior average overhead expenses.

**What is the definition of regular occupation?**

Whenever we use the words "regular occupation" in this policy, we mean your occupation or profession, including your specialty as listed in the Specialty Endorsement attached to this policy.

## Presumptive Disability

**Will you be presumed disabled by certain losses?**

Yes. We will consider you disabled regardless of the income you are earning if, while this policy is in force, you suffer the total and irrecoverable loss of your:

(1) speech; or
(2) hearing in both ears; or
(3) sight in both eyes; or
(4) use of both hands; or
(5) use of both feet; or
(6) use of one hand and one foot; or
(7) sight in one eye and the use of one foot or of one hand.

Benefits will start when loss occurs, even if the waiting period has not expired.

**Exhibit 2 - pg. 25 of 69**

**MAXIMUM BENEFIT PERIOD -** The longest continuous period of time We will pay Disability Benefits during each Continuous Disability. This period is shown on the data page. For any Maximum Benefit Period We will not pay Disability Benefits beyond the later of:

1. The Termination Date; or
2. The date on which 24 months of Disability Benefits have been paid for any Continuous Disability.

**MENTAL DISORDER -** Any mental, emotional or behavioral disorder or condition regardless of the cause (including biological or biochemical disorder or imbalance of the brain) and regardless of the presence of physical symptoms. Except as excluded below, for purposes of this definition, mental disorder includes any diagnosis or condition listed in the most current publication of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychological Association. If this publication is no longer available, We reserve the right to use another nationally published manual of similar scope and purpose. Dementia resulting from stroke; trauma, infectious conditions or degenerative changes such as Alzheimer's Disease, is not considered to be a Mental Disorder for the purpose of this definition.

**OWNER -** The Owner of this policy is shown on the data page unless later changed under GENERAL PROVISIONS.

**PHYSICIAN -** Any licensed medical professional, other than You, the Owner, or a Family Member. The Physician must be practicing and diagnosing within the scope of his or her medical or professional license.

**POLICY ANNIVERSARY -** The anniversary of the policy's Effective Date occurring each year the policy remains in force.

**POLICY MONTH -** A month measured from the same date in a month as the policy's Effective Date.

**POLICY NUMBER -** The Policy Number is shown on the data page.

**PRESUMPTIVE TOTAL DISABILITY -** Your total and permanent loss, because of Your Injury or Sickness, of one of the following:

1. Speech;
2. Hearing in both ears, not restorable by hearing aids;
3. Sight in both eyes (see below);
4. Use of both hands;
5. Use of both feet; or
6. Use of one hand and one foot.

Total and permanent loss of sight in both eyes means that both eyes must measure at or below 20/200, after reasonable efforts are made to correct their vision, using the most advanced medically acceptable procedures and devices available.

**RECOVERY/RECOVERED -** This means You are no longer Disabled from the same cause or causes that caused the most recent Disability.

B130.2(6/00)OH

**Exhibit 2 - pg. 26 of 69**

FILE COPY

## YOUR POLICY INFORMATION

| TOTAL PREMIUMS: | | | INSURED: | LAIRY W MILLER DDS |
|---|---|---|---|---|
| ANNUAL | - | $1,020.87 | AGE & SEX | 32 MALE |
| SEMI-ANNUAL | - | $520.64 | POLICY NUMBER: | 1-977-912H |
| QUARTERLY | - | $265.43 | POLICY DATE: | OCT 1 1993 |
| AUTOMATIC MONTHLY PAYMENT | - | $88.48 | | |

DIVIDEND OPTION ON POLICY DATE -
ACCUMULATION

OWNER OF THIS POLICY ON POLICY DATE
LAIRY W MILLER DDS

MONTHLY DISABILITY INCOME
POLICY

NON-CANCELLABLE AND GUARANTEED
RENEWABLE TO INSURED'S AGE 65

OPTION AFTER AGE 65

ANNUAL DIVIDENDS

| TYPE OF COVERAGE | MONTHLY INCOME BENEFIT | PREMIUMS PAYABLE | ANNUAL PREMIUM |
|---|---|---|---|
| DISABILITY INCOME INSURANCE POLICY | | | |
| PRIOR AVERAGE EARNED INCOME PERCENT 30% | | | |
| MAXIMUM BENEFIT PERIOD FOR DISABILITY: THE INSURED'S AGE 65 | | | |
| WAITING PERIOD FOR DISABILITY: 90 DAYS | $1,750 | THROUGH OCT 1 2027 | $653.08 |

CONTINUED ON PAGE 1B

90-962-1A   7919-0

1A

F. 44836 5-92

1-977-912H

# YOUR POLICY INFORMATION

TOTAL PREMIUMS:
NON-SMOKER
ANNUAL            -    $1,242.70

SEMI-ANNUAL       -    $633.78

QUARTERLY         -    $323.10

AUTOMATIC
MONTHLY PAYMENT   -    $103.56

DIVIDEND OPTION ON POLICY DATE -
ACCUMULATION

OWNER OF THIS POLICY ON POLICY DATE -
LAIRY W KILLER DDS

INSURED:           LAIRY W KILLER DDS

AGE & SEX              32 - MALE

POLICY NUMBER:       1-977-909H

POLICY DATE:        OCT 2 1993

* * * * * * * * * *

OVERHEAD EXPENSE POLICY

NON-CANCELLABLE AND GUARANTEED
RENEWABLE TO INSURED'S AGE 65

OPTION AFTER AGE 65

ANNUAL DIVIDENDS

| TYPE OF COVERAGE | MONTHLY INCOME BENEFIT | PREMIUMS PAYABLE | ANNUAL PREMIUM |
|---|---|---|---|
| BASIC OVERHEAD BENEFIT | | | |
| THE MAXIMUM AGGREGATE OVERHEAD BENEFIT IS  $168,750 | | | |
| MAXIMUM BENEFIT PERIODS FOR: INJURY - 25 MONTHS SICKNESS - 25 MONTHS | | | |
| WAITING PERIODS FOR: INJURY - 30 DAYS SICKNESS - 30 DAYS | $6,750 | THROUGH OCT 1 2027 | $1,242.70 |

CONTINUED ON PAGE 1B

86-550-1A  7919-0

1A

F.44536 5-92

1-977-909H

Exhibit 2 - pg. 28 of 69

FILE COPY

# YOUR POLICY INFORMATION

TOTAL PREMIUMS:
NON-SMOKER

| | | |
|---|---|---|
| ANNUAL | - | $304.15 |
| SEMI-ANNUAL | - | $155.12 |
| QUARTERLY | - | $79.08 |
| AUTOMATIC MONTHLY PAYMENT | - | $25.86 |

INSURED: LAIRY W MILLER DDS
AGE & SEX: 33 - MALE
POLICY NUMBER: 2-033-124H
POLICY DATE: APR 20 1995

DIVIDEND OPTION ON POLICY DATE -
ACCUMULATION

OWNER OF THIS POLICY ON POLICY DATE -
LAIRY W MILLER DDS

* * * * * * * * * * * *
* OVERHEAD EXPENSE POLICY *
* NON-CANCELLABLE AND GUARANTEED *
* RENEWABLE TO INSURED'S AGE 65 *
* OPTION AFTER AGE 65 *
* PARTICIPATING *
* * * * * * * * * * * *

| TYPE OF COVERAGE | MONTHLY INCOME BENEFIT | PREMIUMS PAYABLE | ANNUAL PREMIUM |
|---|---|---|---|
| BASIC OVERHEAD BENEFIT | | | |
| THE MAXIMUM AGGREGATE OVERHEAD BENEFIT IS $37,500 | | | |
| MAXIMUM BENEFIT PERIODS FOR: INJURY - 25 MONTHS SICKNESS - 25 MONTHS | | | |
| WAITING PERIODS FOR: INJURY - 30 DAYS SICKNESS - 30 DAYS | $1,500 | THROUGH APR 19 2027 | $304.15 |

CONTINUED ON PAGE 1B

86-550-1A  7919-1                                    1A

F.44536 5-92                              2-033-124H
                                         2-033-124H

**Exhibit 2 - pg. 29 of 69**

DUPLICATE

## POLICY DATA

**Insured** LAIRY W MILLER
**Effective Date** October 2, 2001
**Owner At Issue** LAIRY W MILLER
**Termination Date** OCTOBER 2, 2029
**Waiting Period** 90 Days

00C7779320 **Policy No.**
40 **Issue Age**
Non-Smoker **Risk Class**
3A **OCC Class**
Male **Sex**

### PREMIUM SUMMARY

|  |  | Annual Premium |
|---|---|---|
| **Base Policy** |  | $415.30 |
| **Riders** |  | $94.80 |
| **Net Annual Premium:** |  | $510.10 |

**Mode of Premium Payment:** Special Monthly **Amount:** $44.64

There are four premium modes available. Other than annual, the total cost due over a policy year varies by the mode selected. The mode you chose is noted above. The total due over the policy year for this mode and the difference between that total and the net annual premium payment are noted below:

**Total of Special Monthly Premium Payments:** $535.68
Difference between net annual premium and total Special Monthly payments: $25.58

### NonCancelable/Guaranteed Renewable Policy

### Basic Policy Benefits

| Commencement Date | Basic Monthly Benefit | Maximum ** Benefit Period |
|---|---|---|
| 91st Day of Disability | $1,000.00 | To Age 67 |

\* The annual premium shown above includes a $30.00 policy fee.

\*\* Subject to policy definitions and provisions.

Benefits, if any, are continued on the next page.

DUPLICATE

B130.2(6/00)OH

Page 3

**Exhibit 2 - pg. 30 of 69**

## POLICY DATA

Insured  LAIRY W MILLER

Effective Date  April 27, 2006

Owner At Issue  LAIRY W MILLER

Termination Date  APRIL 27, 2029

Waiting Period  90 Days

00C9320480  Policy No.

44  Issue Age

NON-SMOKER  Risk Class

3A  OCC Class

Male  Sex

### PREMIUM SUMMARY

| | Annual Premium |
|---|---|
| Base Policy | $1,556.03 |
| Riders | $794.04 |
| **Net Annual Premium:** | $2,350.07* |

Mode of Premium Payment:  Special Monthly      Amount:  $205.63

There are four premium modes available.  The total amount due over a policy year varies by the mode selected.  The mode you chose is noted above.  The total due over the policy year for this mode and the difference between that total and the net annual premium payment are noted below:

Total of Special Monthly Premium Payments:                         $2,467.56

Difference between net annual premium and total Special Monthly payments:    $117.49

\* The Net Annual Premium shown above includes a $40 policy fee.

### NONCANCELABLE / GUARANTEED RENEWABLE POLICY

### BASIC POLICY BENEFITS (To Age 67)

Commencement Date         91st Day of Disability

Basic Monthly Benefit      $3,360.00

Maximum Benefit Period:   To April 27, 2029, or 24 months, whichever is longer.

DUPLICATE

B152

**Exhibit 2 - pg. 31 of 69**

## POLICY DATA

**Insured** LAIRY W MILLER
**Effective Date** April 27, 2006
**Owner At Issue** LAIRY W MILLER
**Termination Date** APRIL 27, 2027
**Waiting Period** 30 Days

00C9320490 **Policy No.**
44 **Issue Age**
NON-SMOKER **Risk Class**
3A **OCC Class**
Male **Sex**

### PREMIUM SUMMARY

| | Annual Premium |
|---|---|
| **Base Policy** | $1,188.79 * |
| **Riders** | $249.67 |
| **Net Annual Premium:** | $1,438.46 |

**Mode of Premium Payment:** Special Monthly **Amount:** $125.87

There are four premium modes available. Other than annual, the total cost due over a policy year varies by the mode selected. The mode you chose is noted above. The total due over the policy year for this mode and the difference between that total and the net annual premium payment are noted below:

**Total of Special Monthly Premium Payments:** $1,510.44
Difference between net annual premium and total Special Monthly payments: $71.98

If this policy is renewed, premiums payable after your age 65 may be changed.

### BASIC POLICY BENEFITS

| Commencement Date | Basic Amount | Maximum Benefit ** |
|---|---|---|
| 31st Day of Disability | $3,732.00 | $89,568.00 |

* The annual premium shown above includes a $30.00 policy fee.

**Subject to policy definitions and provisions.

Benefits, if any, are continued on the next page.

DUPLICATE

**Exhibit 2 - pg. 32 of 69**



Exhibit 2 - pg. 33 of 69

1/13/2021                                             Fwd: email cover.docx

**From:** lwmillerdds@hotmail.com,
**To:** chapparslaw@aol.com,
**Subject:** Fwd: email cover.docx
**Date:** Tue, Jan 12, 2021 8:29 pm
**Attachments:** email cover.docx (24K)

Begin forwarded message:

**From:** Sonia Haywood <Sonia.Haywood@standard.com>
**Subject: email cover.docx**
**Date:** February 28, 2020 at 11:20:19 AM EST
**To:** "lwmillerdds@hotmail.com" <lwmillerdds@hotmail.com>
**Cc:** Charles Hamad <kelly.hamad@fdgonline.com>

Hello. Here is the letter that has some information about filing a claim.

**Sonia Haywood | Processor**
The Standard
Standard Insurance Company
1100 SW Sixth Avenue | Portland, OR 97204
Phone 971.321.8623| Fax 971.321.5609
sonia.haywood@standard.com | www.standard.com

**Exhibit 2 - pg. 34 of 69**

February 28, 2020

Dear Dr. Miller:  Policy: H1977909, H1977912, H2033124, C777932, C932048, C932049

Thank you for contacting Standard Insurance Company regarding your individual disability policy. We understand that you intend to file a disability claim. This describes how to submit a claim for benefits, generally describes the type of information we may need to process your claim and explains how you can help make the claim evaluation process go faster.

To evaluate your claim, your Claim Specialist needs to use data to understand your regular work duties, your earnings, and any impact your medical condition may have on your ability to work. **Often, this means we must ask for more medical, financial, or vocational information than you are** required to submit to start the claim review process.

For instance, we may need more information from your doctor to help us understand your medical condition and when you were treated. If we need this information, we may contact your doctor directly or work with ReleasePoint to help us. ReleasePoint is a vendor used to help The Standard collect additional medical information. ReleasePoint may contact your doctor to ask for copies of your medical records so they can be forwarded to us. So that we can complete the review of your claim as soon as possible, your Claim Specialist may ask you to help us work with your doctor to get the medical information we need.

YOUR PRIVACY IS IMPORTANT: Often, The Standard must obtain, create, and maintain a substantial amount of personally identifiable information about you when processing your claim. We understand that this information must be kept confidential. The Standard complies with the letter and spirit of state and federal privacy laws.

To protect your individual privacy rights and conduct business, The Standard requests, collects and uses only that personal information that is relevant and necessary. We permit persons outside The Standard to have access to your personal information only with your prior written consent or as required or permitted by law. We will make available to you, upon proper request and identification, any information about you that we collect and maintain. However, The Standard retains the right to keep its business records confidential and to disclose sensitive medical information through a physician of your choosing.

PREMIUM PAYMENT: To guard against policy lapse, you should continue all premium payments unless you are told you don't need to make them. The Standard will waive or refund all premiums that become due during the period of disability according to the provisions of your policy.

The Standard is pleased to be of service to you. If you have questions about this letter or the claim forms, you may call (800) 628-9797.

**Exhibit 2 - pg. 35 of 69**



**Exhibit 2 - pg. 36 of 69**



April 13, 2020

LAIRY MILLER, DDS
DEBRA JEAN MILLER, POA FOR LAIRY MILLER, DDS
Redacted

WEST CHESTER, OH     Redacted

Re:    Business Overhead Expense Policy:     H1977909   H2033124
        Business Overhead Expense Claim:      WA0966     WA0968

Dear Dr. and Mrs. Miller:

We are writing regarding the referenced Business Overhead Expense (BOE) claims with
Standard Insurance Company (The Standard).

As noted in our April 10, 2020 letter, we understand you are claiming disability beginning April
1, 2019. For each of the above numbered policies/claims, we advised we would consider your
claim effective February 26, 2020. However, upon further review we find this information was
erroneous. Unfortunately, we find the available information does not support disability, as
defined by the policy.

Please refer to the policies' definition of disability, noted below:

> **Definition of Disability**
> **What is the definition of disability?**
>
> Whenever we use the words "disability" or "disabled" in this policy, we mean a
> sickness or injury which:
>
> (1)    requires the reasonable and customary care of a physician; and
> (2)    results in your inability to perform the substantial and material duties of
>        your regular occupation, as defined further in this section.
>
> *You will be considered unable to perform the substantial and material duties of
> your regular occupation if, due to your disability, your gross earnings from your
> regular occupation are 50% or less of your prior average overhead expenses.
> (emphasis added)*

Initially, please understand we do not discount your medical condition and its resulting
limitations and restrictions. However, to be considered disabled under the policy terms, you

Standard Insurance Company
900 SW Fifth Avenue
Portland OR 97204-1235
tel 888.937.4783

LTR

**Exhibit 2 - pg. 37 of 69**

Miller, Lairy, DDS                    Page 2 of 3                    April 13, 2020

must meet all the criteria, including providing evidence that your gross earnings from your regular occupation are 50% or less of your prior average overhead expenses.

We asked our consulting Certified Public Accountant to review the financial information provided. Prior average overhead expenses (paoe) is the monthly average of overhead expenses for the 12 month period, or the preceding twenty-four months, if higher, immediately prior to the onset of disability. The consulting CPA determined paoe to be $63,394.25 utilizing average monthly overhead expenses for the period April 2017 through March 2019. When we compare your gross revenue as a percentage of paoe from your date of claim through February 2020, we find that gross revenue was never lower than 95% of the paoe.[1] Therefore, you are not disabled, as defined by the policy, and no BOE benefits are payable.

If your practice changes and you begin to see that your gross earnings from your regular occupation are 50% or less of the paoe, please advise our office immediately for reconsideration of your claim. In the meantime, we are providing you with the review procedures available to you.

The following is an explanation of your right to a review of our decision.

If you want us to review your claim and this decision, you must send us a written request within 180 days after you receive this letter. If you request a review, you will have the right to submit additional information in connection with your claim. Please include any such new information along with your request for review. Upon receipt, your claim will be forwarded to the Administrative Review Unit for an independent review. The review will be conducted by an individual who was not involved in the original decision. If necessary, the person conducting the review will consult with a medical professional with regard to your claim. The medical professional will also be someone who was not previously consulted in connection with your claim. The review will be completed within 45 days after we receive your request unless circumstances beyond our control require an extension of an additional 45 days.

We want to let you know that upon further investigation, other valid reasons for limiting or denying your claim, which have not been previously considered, could come to our attention. Therefore, The Standard reserves the right to consider and assert other reasons for limitation or denial of your claim should they occur in the future.

If you would like to discuss any aspect of your claim, or if there is any way that we can be of assistance to you, please contact our office. My direct phone number is (971) 321-5527.

---

[1] Attached is the consulting CPA's spreadsheet with the Gross Revenue as a Percentage of paoe in bold type.

Exhibit 2 - pg. 38 of 69

Miller, Lairy, DDS                    Page 3 of 3                    April 13, 2020

Sincerely,

*Patricia Parvin*

Patricia Parvin, DIF
Disability Claims Consultant
Insurance Services Group
(800) 628-9797, Extension 5527
(971) 321-5609 Fax

**Exhibit 2 - pg. 39 of 69**



"D"

**Exhibit 2 - pg. 40 of 69**

Lairy W. Miller, D.D.S.
Debra J. Miller POA for Lairy Miller D.D.S.
Redacted

West Chester, Ohio    Redacted

April 27, 2020

Re: Business Overhead Expense Policy: C7779320  Claim: WA0969     *(6 claims total)*
                                                                  *individual letters*
Standard Insurance Company                                        *sent*
900 SW Fifth Avenue
Portland, OR 97204-1235

Patricia Parvin, DIF

I am requesting a reconsideration of benefits due as the reason initially provided for denial is incorrect. Please document our appeal and move forward to the Administrative Review Unit in an expedited manner.

As originally provided with the initial medical reports, Dr. Lairy Miller's condition, which includes permanent loss of speech, qualifies under the Presumptive Clause.  The initial ruling based on financial qualifications should not have been the standard held for determination.

Per our right for review we are submitting letters explaining Dr. Miller's illness and resulting physical conditions. Supporting documents are attached from Dr. Rhonna Shatz, Department of Neurology Chair in research of Alzheimer's and Memory Disorders Clinic, University of Cincinnati and Dr. Seema Bhat, Division of Hematology and Oncology, The James Ohio State University Wexner Medical Center.  Both doctors have arrived at the same conclusion and professionally diagnose total loss of speech that is irrecoverable.

We respectfully ask for immediate attention and approval of our policy under the Presumptive Clause.

Sincerely,


Debra J. Miller, POA for Lairy W. Miller, D.D.S.

**Exhibit 2 - pg. 41 of 69**

# The James



THE OHIO STATE UNIVERSITY
WEXNER MEDICAL CENTER

Division of Hematology & Oncology
460 W 10th Ave
5th Floor
Columbus OH 43210-1240
Phone: 614-293-3196
Fax: 614-293-4812

4/21/2020

To Whom It May Concern:

Dr. Lairy Miller is a 58 year old male with a history of 13q deletion Chronic Lymphocytic Leukemia (CLL) and limbic encephalitis whom I saw for new patient consultation/second opinion on 3/17/20 to evaluate for any correlation between CLL and his reported neurological issues. Dr. Miller was diagnosed with CLL in November 2017 by his local hematologist, Dr. Weisenberg, and has not previously required treatment.

Dr. Miller is a high-functioning, right-handed male with a solo dentistry practice in Cincinnati which he has run for the past 32 years. Regarding his neurological issues, Dr. Miller began to have word finding difficulty over the past three to four years; however, since June of 2019, he has had a progressively notable decline with increased hand tremors, inability to write well, more memory issues, and reported "odd occurrences" at work. Over the past year, he has also had problems concentrating when he would wear "dental loops" to better visualize the oral cavity, which has resulted in focusing on the wrong tooth, then catching and correcting himself. He has utilized dental loops for the past 15 years without difficulty prior to the onset of these neurological symptoms.

Dr. Miller was originally told he had early onset Alzheimer's disease, but after seeing a neurologist in Cincinnati he was diagnosed with limbic encephalitis and started on Aricept in early March 2020. While he has had some improvement in his neurological function, he continues to have problems with expressive aphasia. His wife is needed to assist in providing key points and words that she knows he is trying to speak.

Paraneoplastic syndromes are extremely rare and there is lack of data to guide treatment. At our institution, we have successfully treated one patient with Ibrutinib for CLL-directed therapy with good response, yet the improvement of neurological symptoms is slow. I cannot definitively say that Dr. Miller will respond to treatment with Ibrutinib, and despite treatment, he could continue to progressively decline with loss of function. I agree that his continued work could be dangerous to his dental patients and that he may not recover function, including speech, again.

Due to the inability to speak full thoughts and sentences which is required of him in his dental practice, in my opinion, this is essentially a total loss of speech. Dr. Miller will begin treatment with Ibrutinib and I will see him back for re-evaluation in 4 months.

Page 1
Lairy Miller

Exhibit 2 - pg. 42 of 69

Please feel free to contact my office with any questions or if additional information is needed.

Thank you,

Seema Bhat, MD
Division of Hematology

**Exhibit 2 - pg. 43 of 69**



**WEST CHESTER HOSPITAL NEUROLOGY AT NORTH MEDICAL OFFICE**
7690 DISCOVERY DRIVE, SUITE 3500
WEST CHESTER OH 45069-6542
Phone #: 513-475-8730
Fax #:   513-475-8273
www.UCHealth.com

(Dr. Sharg)

April 22, 2020

Patient:    **Lairy W Miller**
Date of Birth:  Redacted  **1961**
Date of Visit: **4/22/2020**

Patricia Parvin, DIF | Disability Claims Consultant, IDI Claims
The Standard
Standard Insurance Company
1100 SW Sixth Avenue | Portland, OR 97204
Phone (800) 628-9797, Extension 6527| Fax 971.321.6609
patricia.parvin@standard.com | www.standard.com

Dear Ms. Parvin,

Lairy Miller is a patient in the Cognitive Disorders clinic at the University of Cincinnati for the treatment of CSF biomarker supported Alzheimer's disease and a superimposed paraneoplastic disorder related to chronic lymphocytic leukemia.

The presenting symptoms of his Alzheimer's disease syndrome are predominantly affecting language, a variant of Alzheimer's disease termed logopenic variant primary progressive aphasia. This is a common subtype in young onset Alzheimer's disease. This speech and language impairment causes a loss of the ability to name people and objects (logopenia) which then leads to "empty speech", word strings that are devoid of adequate information to convey thoughts. In addition, he lacks the capacity for processing what others say to him. His current deficits meet the criterion of total loss of speech that is irrecoverable. Speech" by definition implies the ability to communicate and to converse. It involves more than the ability to verbalize simple words, its purpose is to adequately express and connect abstract thoughts and emotions. On the professional side, it requires the ability to educate patients with information bearing upon their health, and to answer patient questions about treatment procedures, risks, and alternatives, as well as financial considerations. His remaining language abilities are inadequate to execute those tasks of speech that underlie the communication of ideas, information, and thoughts.
The Alzheimer's process is progressive, without treatment to stabilize or cure symptoms. The paraneoplastic disorder further impedes his ability to communicate through its limitations on working memory, a mental space needed to organize thoughts into words and sentences. The paraneoplastic disorder is rare and there are no established treatments for the condition. Even if the condition improved with experimental treatments, the deficits from Alzheimer's disease would remain.

If you have any questions or concerns, please don't hesitate to call.

**Exhibit 2 - pg. 44 of 69**

 

Hamilton

Paula F Weisenberger

Date: 04/27/2020

Patient: LAIRY MILLER
Date of Birth: Redacted 1961

To Whom It May Concern;

The above patient is under my care for Chronic Lymphocytic Leukemia (CLL).  The patient has a total loss of functional speech and the ability to communicate.  If you have any questions please do not hesitate to call me at (513) 751-2273.

Sincerely,

*Pau F Weis*

Paula F Weisenberger

Electronically signed by Elaine Armentrout 04/27/2020 14:16 EDT

**Exhibit 2 - pg. 45 of 69**

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURT
01/25/2021 10:10 A
CV 2021 01 0104



"E"

Exhibit 2 - pg. 46 of 69



May 21, 2020

LAIRY MILLER, DDS
DEBRA JEAN MILLER, POA FOR LAIRY MILLER, DDS
Redacted

WEST CHESTER, OH          Redacted

Re:  Disability Income Policy:          H1977912   C7779320   C9320480
     Disability Income Claim No:        WA0967     WA0969     WA0970
     Business Overhead Expense Policy:  H1977909   H2033124   C9320490
     Business Overhead Expense Claim:   WA0966     WA0968     WA0971

Dear Dr. and Mrs. Miller:

We are writing regarding the referenced Individual Disability Income (IDI) and Business
Overhead Expense (BOE) claims with Standard Insurance Company (The Standard).

Review of your claim reflects we made the following determinations regarding disability for
each of the policies:

**Individual Disability Policies**
- H1977912/Claim WA0967: Residual disability from May 1, 2019 through February 25,
  2020 and Total Disability beginning February 26, 2020;

- C7779320/Claim WA0969: Total Disability beginning February 26, 2020; and

- C9320480/Claim WA0970: Residual Disability beginning May 1, 2019 through February
  25, 2020 and Total Disability beginning February 26, 2020.

**Business Overhead Expense Policies**
- H1977909/Claim WA0966: No benefits payable as gross earnings were not 50% or less
  of prior average overhead expenses;

- H2033124/ClaimWA0968: No benefits payable as gross earnings were not 50% or less of
  prior average overhead expenses; and

- C9320490/Claim WA0971: Residual disability from May 1, 2019 through February 25,
  2020 and Total Disability beginning February 26, 2020.

Standard Insurance Company
900 SW Fifth Avenue
Portland OR 97204-1235
tel 888.937.4763

LTR

**Exhibit 2 - pg. 47 of 69**

Miller, Lairy, DDS                        Page 2 of 8                        May 21, 2020

### Your request for Presumptive Disability Benefits

By letters dated April 27, 2020 you disagreed with our determination of Residual/Total Disability and requested we evaluate the claims as Presumptive Disability claims. Along with your letters, you provided correspondence from Drs. Weisenberger, Shatz and Bhat.

Please refer to Attachments for each Policy's definition of **Presumptive Disability**.

You are claiming loss of speech as the cause of Presumptive Disability. While the definitions of Presumptive Disability differ slight among the various policies, they all require total and either irrecoverable or permanent loss of speech. Your physicians noted, *in part*, the following regarding your speech.

- Dr. Weisenberger: "The patient has a total loss of functional speech and the ability to communicate."

- Dr. Shatz: "This speech and language impairment causes a loss of the ability to name people and objects (logopenia) which then leads to 'empty speech', word strings that are devoid of adequate information to convey thoughts…The Alzheimer's process is progressive, without treatment to stabilize or cure symptoms. The paraneoplastic disorder impedes this ability to communicate through its limitations on working memory, a mental space needed to organize thoughts into words and sentences…"

- Dr. Bhat: "While he has had some improvement in his neurological function, he continues to have problems with expressive aphasia. His wife is needed to assist in providing key points and words that she knows he is trying to speak…Due to the inability to speak full thoughts and sentences which is required of him in his dental practice, in my opinion, this is essentially a total loss of speech."

We carefully considered the information provided, including review by our Physician Consultant, Board Certified in Family Practice. It was noted that you have advanced Alzheimer's disease, in additional to chronic lymphocytic leukemia. We concur there is significant cognitive impairment and you are unable to name certain objects. Further, your sentences or thoughts may sometimes be incoherent.

Despite the cognitive impairments, the Physician Consultant advised there is no disease process identified affecting the larynx, vocal cords or ability to phonate. It is apparent based upon review that you can vocalize intelligible words. As such, you do not have a total and irrecoverable/permanent loss of speech. While you do have cognitive dysfunction, this is a different disorder than those conditions which cause loss of vocalized speech. Please understand, Presumptive Disability does not include the loss of one's ability to have a coherent conversation, only the total and irrecoverable/permanent loss of speech, or the items noted by the

**Exhibit 2 - pg. 48 of 69**

Miller, Lairy, DDS                    Page 3 of 8                          May 21, 2020

definition. Consequently, we continue to find you to be Residually/Totally Disabled, as stated above.

<u>**Policy C9320480/Claim WA0970: Catastrophic Disability**</u>

Please refer to the Catastrophic Disability definition in the Attachments to this letter.

On April 24, 2020 information was requested from Dr. Shatz pertaining to your eligibility for Catastrophic Disability benefits. Dr. Shatz's response was received and reviewed, including review by our Nurse Case Manager. Following review, <u>we are approving your claim for Catastrophic Disability.</u>

The Catastrophic Disability Benefit Rider provides an additional $4,000 during periods of Total Disability. The 90-day Waiting Period was previously satisfied.

- Catastrophic Disability: Effective February 26, 2020
- First Catastrophic Disability Benefit Period: February 26, 2020 – April 30, 2020
- Amount Paid: $8,551.60

Future Catastrophic Benefits will be included in the monthly benefit for Claim WA0970, resulting in a new monthly benefit of $7,360.00.

<u>**What information do we need from you?**</u>

- Monthly profit and loss statements for "First Impressions dentistry" for the period March 2020 to the present and for each month of claimed Disability under the Business Overhead Expense policy;
- When available, a complete copy of your 2019 individual income tax return, including copies of all supporting schedules and attachments.

<u>**How can you submit the information?**</u>

- Email: patricia.parvin@standard.com
- Fax
- U.S. Mail

**Exhibit 2 - pg. 49 of 69**

Miller, Lairy, DDS                    Page 4 of 8                         May 21, 2020

**Right to Review Presumptive Disability Decision**

**Policy H1977912/Claim WA0967; H1977909/Claim WA0966; H2033124/ClaimWA0968; and Policy C9320490/Claim WA0971**

If you want us to review your claim and this decision, you must send us a written request within 180 days after you receive this letter. If you request a review, you will have the right to submit additional information in connection with your claim. Please include any such new information along with your request for review. Upon receipt, your claim will be forwarded to the Administrative Review Unit for an independent review. The review will be conducted by an individual who was not involved in the original decision. If necessary, the person conducting the review will consult with a medical professional with regard to your claim. The medical professional will also be someone who was not previously consulted in connection with your claim. The review will be completed within 45 days after we receive your request unless circumstances beyond our control require an extension of an additional 45 days.

We want to let you know that upon further investigation, other valid reasons for limiting or denying your claim, which have not been previously considered, could come to our attention. Therefore, The Standard reserves the right to consider and assert other reasons for limitation or denial of your claim should they occur in the future.

**Policy C7779320/Claim WA0969**

REVIEW PROCEDURE -If We deny all or part of Your claim, You may request a review. You must request a review in writing within 60 days after receiving notice of the denial.

If We deny Your claim, You may send Us written comments or other items to support Your claim, and You may review any non-privileged information that relates to Your request for review.

We will review Your claim promptly after We receive Your request. We will send You a notice of Our decision within 60 days after We receive Your request. We will send it within 120 days if special circumstances require an extension. We will state the reasons for Our decision and refer You to the relevant parts of the policy.

**Policy C9320480/Claim WA0970**

REVIEW PROCEDURE -If We deny all or part of Your claim, You may request a review. You must make the request within 180 days after receiving notice of the denial. Your request must be in writing.

If We deny Your claim:

**Exhibit 2 - pg. 50 of 69**

Miller, Lairy, DDS            Page 5 of 8            May 21, 2020

1.      You may send Us written comments or other items to support Your claim; and
2.      You may review any non-privileged information that relates to Your request for review.

We will review Your claim promptly after We receive Your request. We will send You a notice of Our decision within 60 days after We receive Your request. If special circumstances require an extension We will send it to You within 120 days. We will state the reasons for Our decision; and We will refer You to the relevant parts of the policy.

## Summary

We do not find a basis to support Presumptive Disability and will continue our evaluation of your claim based upon our previous determinations of Residual, followed by Total Disability, as noted above. Additionally, we will provide benefits under the Catastrophic Benefit Rider for Policy C9320480/Claim WA0970 beginning May 26, 2020. As previously advised in our letters of April 13th and April 20th, we did not find you Disabled under the terms of the BOE Policies H1977909 and H2033124.

Kindly provide the information requested so that we may continue our evaluation of Business Overhead Expense Policy C9320490/Claim WA0971.

If you would like to discuss any aspect of your claim, or if there is any way that we can be of assistance to you, please contact our office. My direct phone number is (971) 321-5527.

Sincerely,

*Patricia Parvin*

Patricia Parvin, DIF
Disability Claims Consultant
Insurance Services Group
(800) 628-9797, Extension 5527
(971) 321-5609 Fax

**Exhibit 2 - pg. 51 of 69**

Miller, Lairy, DDS                    Page 6 of 8                    May 21, 2020

### Policy H1977912/Claim WA0967

**Will you be presumed disabled by certain losses?**

Yes. We will consider you disabled regardless of the income you are earning if, while this policy is in force, you suffer the total and irrecoverable loss of your:

(1)     speech; or
(2)     hearing in both ears; or
(3)     sight in both eyes; or
(4)     use of both hands; or
(5)     use of both feet; or
(6)     use of one hand and one foot.

Benefits will start when loss occurs, even if the waiting period has not expired.

### Policy C7779320/Claim WA0969:

PRESUMPTIVE TOTAL DISABILITY - Your total and permanent loss, because of Your Injury or Sickness, of one of the following:

1.     Speech;
2.     Hearing in both ears, not restorable by hearing aids;
3.     Sight in both eyes (see below);
4.     Use of both hands;
5.     Use of both feet; or
6.     Use of one hand and one foot.

Total and permanent loss of sight in both eyes means that both eyes must measure at or below 20/200, after reasonable efforts are made to correct their vision, using the most advanced medically acceptable procedures and devices available.

### Policy C9320480/Claim WA0970

PRESUMPTIVE TOTAL DISABILITY - Your total and permanent loss, because of Your Injury or Sickness, of one of the following:

1.     Speech;
2.     Hearing in both ears, not restorable by hearing aids;
3.     Sight in both eyes (see below);
4.     Use of both hands;
5.     Use of both feet; or

**Exhibit 2 - pg. 52 of 69**

6.      Use of one hand and one foot.

Total and permanent loss of sight in both eyes means: Both eyes must measure at or below 20/200, after reasonable efforts are made to correct their vision, using the most advanced medically acceptable procedures and devices available.

You will be considered as Totally Disabled if You become Presumptively Totally Disabled under the policy terms. See the Benefit for Presumptive Total Disability provision.

**CATASTROPHIC DISABILITY/ CATASTROPHICALLY DISABLED** - Because of Your Injury or Sickness:

1.      You are unable to safely and completely perform two or more Activities Of Daily Living without Hands-on Assistance or Standby Assistance due to loss of functional capacity;

2.      You require Substantial Supervision for Your health or safety due to Severe Cognitive Impairment; or

3.      You are Presumptively Totally Disabled, as described in the policy.

**BENEFIT FOR CATASTROPHIC DISABILITY** - You will be eligible for the benefit for Catastrophic Disability if:

1.      You become Catastrophically Disabled while this rider is in force; and

2.      The benefit for Total Disability is payable under the policy.

This benefit will start after the Waiting Period ends. However, if You are Presumptively Totally Disabled, benefits start on the day Your Presumptive Total Disability begins. Benefits will continue through the Maximum Benefit Period, provided that You remain eligible for this benefit according to this rider. Payment of this benefit will be in addition to any other payment that may be due under the policy or any other rider made part of the policy. We will pay this benefit monthly. The amount of this benefit is shown on the data page.

We will pay the benefit for Catastrophic Disability after We receive proof of Loss satisfactory to Us. In addition, We may terminate, defer or suspend payment of this benefit as outlined in the policy's Claims provision.

<u>H1977909/Claim WA0966</u>

**Will you be presumed disabled by certain losses?**

Yes. We will consider you disabled regardless of the income you are earning if, while this policy is in force, you suffer the total and irrecoverable loss of your:

**Exhibit 2 - pg. 53 of 69**

(1)     speech; or
(2)     hearing in both ears; or
(3)     sight in both eyes; or
(4)     use of both hands; or
(5)     use of both feet; or
(6)     use of one hand and one foot; or
(7)     sight in one eye and the use of one foot or of one hand.

Benefits will start when loss occurs, even if the waiting period has not expired.

### Policy H2033124/Claim WA0968

**Will you be presumed disabled by certain losses?**

Yes. We will consider you disabled regardless of the income you are earning if, while this policy is in force, you suffer the total and irrecoverable loss of your:

(1)     speech; or
(2)     hearing in both ears; or
(3)     sight in both eyes; or
(4)     use of both hands; or
(5)     use of both feet; or
(6)     use of one hand and one foot; or
(7)     sight in one eye and the use of one foot or of one hand.

Benefits will start when loss occurs, even if the waiting period has not expired.

### Policy C9320490/Claim WA0971

**PRESUMPTIVE TOTAL DISABILITY** - Your total and permanent loss, because of Your Injury or Sickness, of one of the following:

1.     Speech;
2.     Hearing in both ears;
3.     Sight in both eyes;
4.     Use of both hands;
5.     Use of both feet; or
6.     Use of one hand and one foot.

**Exhibit 2 - pg. 54 of 69**



**Exhibit 2 - pg. 55 of 69**

# TIMOTHY S. CHAPPARS
### Attorney at Law
P.O. Box 280 • Xenia, Ohio 45385

Timothy S. Kress
Associate

July 16, 2020

Telephone
(937) 374-0077
Fax
(937) 374-0078

Ms. Patricia Parvin, DIF
Disability Claims Consultant, IDI Claims
**STANDARD INSURANCE COMPANY**
1100 SW Sixth Ave.
Portland, OR 97204

**VIA E-MAIL TO:** patricia.parvin@standard.com,
**FAX TO:** 1-(971)-321-5609, AND
**OVERNIGHT DELIVERY**

RE: Dr. Lairy Miller, DDS/Debra J. Miller, POA for Lairy Miller, DDS
Standard Insured: Dr. Lairy Miller, DDS
Business Overhead Expense Policy: H1977909 H2033124 C9320490
Business Overhead Expense Claim: WA0966 WA0968 WA0971
Disability Income Policy: H1977912 C7779320 C9320480
Disability Income Claim: WA0967 WA0969 WA0970

Dear Ms. Parvin:

First, this will serve as notice that my office will be representing Dr. Lairy Miller and his wife Ms. Debra J. Miller who has Power of Attorney in the above-referenced claims. Please acknowledge this letter of representation and do not contact my clients without prior authorization from me.

Second, please allow this correspondence to serve as timely appeals for The Standard's determinations regarding disability, and specifically The Standard's Presumptive Disability Decisions, for each of the above-referenced policies, as well as for any other adverse determinations regarding the policies. The intent of this letter is to fulfill The Standard's procedure regarding "Right to Review Presumptive Disability Decision" specified at page 4 of 8 of your correspondence dated May 21, 2020. See copy of May 21, 2020 correspondence, enclosed. (Tab "A") Further, as the presumptive disability issues as to all six policies overlap, please consider this single correspondence as an appeal of The Standard's determinations regarding all six policies referenced above as well as your correspondence dated May 21, 2020.

The basis for Dr. Miller's appeal of The Standard's adverse determination as to presumptive disability and hence denial of benefits is that in point of fact Dr. Miller has in fact suffered the "total and irrecoverable loss of speech" as specified as a condition in some of the policies and "total and permanent loss of speech" as specified as a condition in others, a prerequisite for payment of disability benefits.

As is apparent, the policies do not define "total and irrecoverable" or "total and permanent" loss of speech. Importantly, The Standard in certain of the policies does define an analogous condition regarding loss of sight. For example, in Disability Income Insurance Policy No. 00C7779320, the Policy at page 5 provides: "Total and permanent loss of sight in both eyes means that both eyes must measure at or below 20/200, after reasonable efforts are made to correct their vision, using the most advanced medically acceptable procedures and devices available." See enclosed. (Tab "B") A person with 20/200 may be legally blind, but still has vision to some extent. But The Standard policies do not contain a similar definition or qualification as to loss of speech. Similar to a person who is still capable of discerning objects to a certain

**Exhibit 2 - pg. 56 of 69**

extent but is classified as legally blind and hence meets The Standard's definition of "total and permanent loss of sight in both eyes," while Dr. Miller is able to vocalize to a limited extent, he is not capable of speech since as a dentist he is unable to communicate in meaningful fashion with his patients, thus precluding his continued employment as a dentist. Indeed, one standard dictionary definition of "speech" is "the faculty or act of expressing or describing thoughts, feelings, or perceptions by the articulation of words." The American Heritage Dictionary, 2nd College Edition, Houghton Mifflin, 1982, enclosed. (Tab "C") And the definition of "speech" in Black's Law Dictionary, 9th Edition, 2009, includes "the expression or communication of thoughts or opinions in spoken words." (Tab "D") By these definitions, Dr. Miller has suffered the "total and irrecoverable" and/or "total and permanent" loss of his speech. While The Standard has attempted to rely on a different interpretation of loss of "speech" in its May 21, 2020 denial of benefits correspondence, the policies' lack of precise language results in ambiguities, and Ohio law has long been consistent with the standard principle of construction that ambiguities in a policy of insurance are to be construed against the insurer as the drafter of the policies. See, e.g., King v. Nationwide Ins. Co., 35 Ohio St.3d 208 (1988), which held in the syllabus: "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."

In the denial letter of May 21, 2020, The Standard, while acknowledging Dr. Miller's serious speech impairments, purportedly relied on an unidentified Physician Consultant who "advised there is no disease process identified affecting the larynx, vocal cords, or ability to phonate." The 5/21/20 denial letter states: ". . . Presumptive Disability does not include the loss of one's ability to have a coherent conversation, only the total and irrecoverable/permanent loss of speech . . . ." But if The Standard intended to deny coverage only in the situation when its insured was completely unable to vocalize, it should have made it clear in the policy; instead of using the ambiguous phrase "total and irrecoverable" and/or "total and permanent" loss of speech, it should have simply specified "muteness." It did not do so, and as a result of evidence provided by the Millers in which The Standard has already recognized that Dr. Miller's multifactoral disease process precludes coherent conversation, the policies must be construed in favor of The Standard's insured Dr. Miller. In this regard, we note that only in Policy No. 00C7779320 did The Standard provide under "Allocation of Authority" that The Standard retained the authority to interpret the policy and resolve all questions arising in the administration, interpretation, and application of the policy; it did not do so in the other policies and specifically not in the Business Overhead Expense Policies. See provision in Policy No. 00C7779320, enclosed. (Tab "E")

As is known to The Standard, Dr. Miller's claim is supported by three treating physician reports previously forwarded by the Millers to The Standard from neurologist Dr. Rhonna Shatz, hematologist Dr. Seema Bhat, and oncologist Dr. Paula Weisenberger, all concluding that Dr. Miller has suffered a total loss of speech. We are now enclosing additional copies of those reports for your convenience. (Tab "F") We are also enclosing selected records obtained by Ms. Miller by using My Chart University of Cincinnati from Dr. Shatz showing, inter alia, the results of Dr. Miller's abnormal EEG performed 2/7/20; abnormal findings of Dr. Miller's MRI performed on the same date in which the indication is documented as: "confusion and altered mental status with history of chronic lymphocytic leukemia"; results from the lumbar puncture performed 1/28/20 in which the indication is documented as including memory loss and primary progressive aphasia[1]; and a patient encounter on 1/6/20 in which "memory loss" was the reason for the visit. (Tab "G-1")

---

1. Primary Progressive Aphasia. https://www.aphasia.org/aphasia-resources/primary-progressive-aphasia/. Primary Progressive Aphasia (PPA) is a neurological syndrome in which language capabilities become slowly and progressively impaired. Unlike other forms of aphasia that result from stroke or brain injury, PPA is caused by neurodegenerative diseases, such as Alzheimer's Disease or Frontotemporal Lobar Degeneration. PPA results from deterioration of brain tissue important for speech and language. Although

Exhibit 2 - pg. 57 of 69

We are also enclosing copies of a visit with Dr. Miller's PCP, Dr. Douglas L. Hancher, dated October 23, 2019, documenting back then neurocognitive decline to the extent that the PCP did not believe speech therapy would be helpful. (Tab "G-2") In short, this medical evidence from Dr. Miller's well-credentialed practitioners, individually and collectively, proves that he has suffered "total and irrecoverable" and/or "total and permanent" loss of his speech; he is incapable of engaging in speech such that he is not able to maintain his dental practice and is entitled to the benefits specified in the contracts of insurance for which he has been paying premiums dating back to the early 1990s.

*     *     *

It would appear as if the policies at issue are not governed by ERISA. Instead, the policies delivered to Dr. Miller in the state of Ohio are governed by common law in Ohio. In this regard, Ohio provides that an insurer such as The Standard has the duty to handle its insured's claim in good faith and that breach of the duty gives rise not only to claims based on contract but also to a cause of action in tort. See discussion in LeForge v. Nationwide Mutual Fire Ins. Co., 82 Ohio App.3d 692 (Clinton Co. 1992), a case in which the undersigned obtained a jury verdict against Nationwide for the tort of an insurer's bad faith in the handling of its insured's claim, as affirmed by the Twelfth District Court of Appeals, the same appellate district that would be involved in the instant situation for an action brought in Butler County, the county of the Millers' residence where the breach of duty occurred. (Tab "H") Note also that the Twelfth District Court of Appeals specifically authorized in a bad faith claim the recovery of extra-contractual damages for mental anguish and inconvenience resulting from matters such as financial problems and the like. In the event The Standard does not reverse its determinations as set forth in its correspondence of May 21, 2020, the Millers have authorized filing suit seeking any and all available remedies. This would also include The Standard's exposure for punitive damages and the Millers' attorney's fees and expenses. As for the last categories, punitive damages can be obtained on a showing of malice, defined in Ohio as including "a conscious disregard for the rights and safety of other persons that have a great probability of causing substantial harm." Cabe v. Lunich, 70 Ohio St.3d 598 (1994), syllabus holding. Here, a denial of benefits specified in The Standard's policies has been working, and is continuing to work, an extreme hardship on the Millers due to financial difficulties resulting from Dr. Miller's inability to work as a dentist brought about by his total and irrecoverable loss of speech. In the event legal action proves to be necessary, and as Ohio law provides that legal action can be maintained on agency principles against the master, servant, or both (National Union Fire Insurance v. Wuerth, 122 Ohio St.3d 594 (2009)), the Millers may also name as defendants insurance agent C. Kelly Hamad and his organization Financial Design Group (headquartered in Toledo, Ohio) for claims based on, inter alia, breach of contract, fraud, and misrepresentation. By way of copying Mr. Hamad with this correspondence, we are apprising him of the current status of the situation.

Mindful of the sixty day time limit to appeal specified in some, but not all, of the policies, the Millers are asserting this appeal within the sixty day period but specifically reserving the right to produce in a timely manner additional evidence in support of their claims which has been difficult to procure in light of complications arising from the Covid-19 pandemic. Further, we understand The Standard has previously interviewed Dr. Miller in the absence of counsel; we hereby request a copy of a transcript of the same in the event The Standard maintains its denial.

---

the first symptoms are problems with speech and language, other problems associated with the underlying disease, such as memory loss, often occur later. PPA commonly begins as a subtle disorder of language, progressing to a nearly total inability to speak, in its most severe stage. * * * Eventually, almost all patients become mute and unable to understand spoken or written language, even if their behavior seems otherwise normal." [Emphasis added.] Dr. Miller's decline as demonstrated by the enclosed medical records and reports is completely consistent with the typical progression of PPA.

3

Exhibit 2 - pg. 58 of 69

Finally, taking a broad perspective, it is widely known that Japanese multi-national insurer Meiji Yasuda purchased The Standard's United States parent company StanCorp Financial Group Inc. in 2016. Review of Meiji Yasuda's 2019 Annual Report emphasizes that Meiji Yasuda "is striving to seize opportunities arising from overseas market growth" and "to this end we aim to raise the proportion of profit contributed by the overseas insurance business in consolidated operating results to 15% by March 31, 2028." In particular, Meiji Yasuda is relying on StanCorp Financial Group Inc.– "Since U.S-based StanCorp Financial Group, Inc. became a wholly-owned subsidiary in March 2016, the overseas insurance business has been growing significantly"– to boost its profits. See selected portions of Meiji Yasuda 2019 Annual Report. (Tab "I"). And while Meiji Yasuda at the beginning of its annual report also sets forth lofty standards of ethics in treating customers, actions speak louder than words, The Millers have every reason to be concerned that The Standard is improperly misinterpreting policy language to deny these legitimate claims, all in an effort to inure to the benefit of corporate owner Meiji Yasuda's bottom line.

In view of the foregoing explanation, the Millers trust that The Standard and StanCorp Financial Group Inc. will do the right thing here, sustain the Millers' appeal as to presumptive disability, and agree to honor the terms of all six contracts at issue by paying specified benefits. This would include back-dating benefits on those policies for which The Standard has already agreed to pay benefits to the commencement of Dr. Miller's disability, as documented both previously as well as herein.

Please acknowledge receipt of this appeal. Please call if you have any questions or comments.

We look forward to The Standard's timely response.

Very truly yours,

TIMOTHY S. CHAPPARS

TSC/atc
Enclosures
cc:     Dr. Lairy Miller and Ms. Debra J. Miller
        C. Kelly Hamad, via e-mail only to: kelly.hamad@fdgonline.com

4

**Exhibit 2 - pg. 59 of 69**



**Exhibit 2 - pg. 60 of 69**

1/13/2021          Re: Dr. Lairy Miller, DDS/Debra J. Miller, POA for Lairy Miller, DDS; Business Overhead Expense Claim: WA0966 WA0968 WA0971; Dis...

**From:** chapparslaw@aol.com,

**To:** patricia.parvin@standard.com,

**Cc:** jgrove1251@gmail.com, jfgrove53@gmail.com,

**Subject:** Re: Dr. Lairy Miller, DDS/Debra J. Miller, POA for Lairy Miller, DDS; Business Overhead Expense Claim: WA0966 WA0968 WA0971; Disability Income Claim: WA0967 WA0969 WA0970

**Date:** Thu, Aug 6, 2020 2:55 pm

**Attachments:** Miller, Dr. Lairy-- Expert Report of Jennifer Hensley.pdf (3015K), Miller, Dr. Lairy-- Jennifer Hensley CV.pdf (831K)

Ms. Parvin-- You may recall that the Millers have timely initiated an appeal of The Standard's denial of business overhead expense benefits, etc., by way of our correspondence dated July 16, 2020, receipt of appeal acknowledged by The Standard on the same date. Our correspondence indicated that the Millers reserved the right to submit additional evidence in view of delay largely attributable to complications due to Covid-19. The Millers are now supplementing their appeal with the results of an expert evaluation from Jennifer Hensley, MA, CCC-SLP as set forth in the attached report. Please take appropriate steps to make sure that this report is forwarded to and considered by the Administrative Review Unit prior to any decisions being made. The expert's CV is attached as well.

Please acknowledge receipt of this e-mail and the report and CV. Please call if you have any questions or comments. Thank you. TSC

Timothy S. Chappars, Esq.
**CHAPPARS LAW OFFICE**
P. O. Box 280
Xenia, OH 45385
Tel:  (937)-374-0077
Fax: (937)-374-0078
E-mail: www.chapparslaw@aol.com

CONFIDENTIALITY NOTICE:
This message may contain information that is confidential and privileged. If you have received this transmission in error, please delete it and notify the sender of the error. Thank you.



Exhibit 2 - pg. 62 of 69



September 14, 2020

Timothy S. Chappars, Esq.
CHAPPARS LAW OFFICE
P.O. Box 280
Xenia, OH 45385

Sent via email to: www.chapparslaw@aol.com

Re:    Disability Income Policy: H1977912 C7779320 C9320480
       Disability Income Claim No: WA0967 WA0969 WA0970
       Business Overhead Expense Policy: H1977909 H2033124 C9320490
       Business Overhead Expense Claim: WA0966 WA0968 WA0971

Dear Mr. Chappars:

I am writing regarding Dr. Miller's Individual Disability Income (IDI) and Business Overhead Expense (BOE) claims with Standard Insurance Company (The Standard).

Based on the information available for my review, The Standard's Administrative Review Unit has found the previous decisions to deny benefits for Presumptive Disability were correct and have been upheld. This was an independent review, conducted separately from IDI Claims, who made the original claim decision. The letter will provide further explanation of my determination.

In order to provide a more direct explanation of my review, I have enclosed the pages of applicable definitions rather than inserting them into the body of this letter. It is my understanding IDI Claims has approved Dr. Miller's claims initially for Residual/Partial Disability and then Total Disability once he stopped working. There does not appear to be any dispute that IDI Claims accepts Dr. Miller not only has limitations and restrictions from working but met the definition of Catastrophically Disabled under policy 00C9320480.

At issue in my administrative review is whether Dr. Miller thus far has met the six policies' definitions of Presumptive Disability secondary to his ability to speak, which vary slightly by policy age but all state in part, "...total and irrecoverable [or permanent] loss..." [of] Speech.

As you correctly cite in your letter, The Standard's policies do not provide additional context in relation to "total and permanent" with regard to Speech, as it does with visual acuity. It also, though, does not provide additional context in the loss of use of upper or lower extremities (or a combination of the two, per the definitions). In these cases, we evaluate whether there is a complete loss of use. Obviously an amputation either through accident or disease of the hands or feet would meet this threshold. The question becomes whether less than total loss of practical use would be considered Presumptive. In my research, the partial loss of use of extremities, including fingers and toes, even in relatively severe cases, have not been deemed a Presumptive Disability.

Standard Insurance Company
900 SW Fifth Avenue
Portland OR 97204
tel 971.321.7000

**Exhibit 2 - pg. 63 of 69**

It is also important to understand an insured would not have to be mute to be considered Presumptively Disabled, as your letter asserts. Loss or paralysis of vocal cords, brain damage, glossectomy, ALS, etc. can all result in a total and permanent loss of Speech but would not necessarily cause the patient mutism.

The Speech-Language-Communication Evaluation Dr. Miller underwent with Ms. Hensley was very informative to my review. This was the most recent and comprehensive standarized assessment of Dr. Miller's verbal capacity. It should also be noted that I did not find it necessary to utilize a Physician Consultant as part of my review. I believe the case file makes clear Dr. Miller's impairment and this evaluation, rather than being of a dispute medically, is instead contractual.

Ms. Hensley's report documents Dr. Miller's cognitive impairment at 7/30 in the Montreal Cognitive Assessment (MoCA), which is an evaluation of Dr. Miller's signs of dementia-related symptoms. When it came to the Western Aphasia Batter – Revised (WAB-R), however, Dr. Miller scored much higher, at an aphasia quotient of 73.6/100. Per my research, scores for the WAB-R rate in severity as follows: 0-25 very severe, 26-50 severe, 51-75 moderate, and 76 and above is mild.

Ms. Hensley also makes the following assessments in her report:

- "Dr. Miller's social language (social pragmatic language) was judged to be within normal limits; he was engaged and cooperative throughout testing, indicating that results are reflective of true function."

- "Dr. Miller has high accuracy for identification of common concrete objects, however, he demonstrated significant deficits in following directions, especially for multi-step commands, with a score of 56 / 80 for this section. Repetition for single words noted to be relatively intact, but low accuracy noted for sentences, especially as length increased."

- "Motor Speech: Dr. Miller has inconsistent ability to produce words and sentences, with inconsistent speech sound errors, including sound substitutions, omissions, and repetitions, difficulty initiating speech, abnormal prosodic features (flat tone, reduced word and phrase stress), and increasing difficulty noted for longer words and phrases. At its most severe, Dr. Miller is unable to produce any meaningful speech in response to questions. Dr. Miller's speech can be characterized as halting, with variable intelligibility. Job related tasks and activities that would be difficult with these deficits would be describing medical and treatment recommendations to patients, giving instructions/directions to staff, and participating in meetings or discussions.

- "Expressive Language: Dr. Miller is able to express only some of his basic wants and needs through verbal communication. Moderately complex communication is impaired as Dr. Miller experiences frequent word retrieval problems resulting in "empty speech" and deficits with fluency of speech (especially when combined with motor speech deficits above). This means he has trouble coming up with words and forming meaningful sentences. Job related tasks and activities that can be difficult with these types of deficits include explaining technical information to staff or patients, discussing plans of care with staff, and explaining recommendations to patients."

- "Receptive Language: While Dr. Miller is able to understand basic information needed to participate in social aspects of home and community activities, he demonstrates difficulty understanding complex information. For example, he is unable to follow 2-step directions without assistance. Job related tasks and activities that can be difficult with these types of deficits include reading or listening to medical information, participating in staff meetings, and obtaining medical histories from patients."

**Exhibit 2 - pg. 64 of 69**

- "Cognitive Communication: Again, while Dr. Miller is able to attend to simple conversational tasks with appropriate social responses, he has difficulty paying attention to conversations in distracting environments and recalling new information. Job-related tasks and activities that can be difficult with these types of deficits include reading or listening to new information in a busy office, recalling names and medical information for new patients, and participating in conversations while completing technical tasks."

Ms. Hensley's final statement in her report reads as follows:

"The severity of Dr. Miller's communication impairments restricts the extent and manner of his participation in social and community activities, and is incompatible with employment activities requiring verbal communication with staff and patients. In view of the results of the interview process, findings of the testing completed, and my knowledge, training and experience, my opinion to a reasonable degree of probability, is that Dr. Miller has suffered a total and irreversible loss of functional communication needed to perform his profession."

I do not see any reason to disagree with Ms. Hensley's report overall. Dr. Miller is clearly dealing with a very severe and unfortunate combination of conditions that have drastically impacted his ability to function as he did prior to disability. The Standard has accepted that Dr. Miller is unable to work in his profession and has been determined to be Totally Disabled under the terms and provisions of his policies. His benefit eligibility under the BOE policies can depend on financial factors not informed by his inability to work, though it is my understanding financial documentation has been requested and/or received by IDI Claims.

Upon review of all available documentation and as explained in detail above, I do not find Dr. Miller met his policies' definitions of Presumptive Disability at any time since the claimed onset date of Disability. Accordingly, I have determined the previous decision to decline IDI Benefits under those specific provisions was correct and has been upheld.

I would also like to note that this decision is relevant to Dr. Miller's condition presently. It is not within the scope of my review to determine whether Dr. Miller will meet the definition of Presumptive Disability at a later date. Considering the severity of his illnesses, there may come a time when Dr. Miller does become Presumptively Disabled and as part of the ongoing management of his case by IDI Claims, continued monitoring of Dr. Miller's conditions seems appropriate.

The Standard wants to let you know that upon further investigation, other valid reasons for limiting benefits under these claims, which have not been previously considered, could come to our attention. Therefore, Standard Insurance Company reserves the right to consider and assert other valid reasons for limitation of the claims should they occur in the future.

Dr. Miller's IDI policy does not provide voluntary alternative dispute resolution options. However, you may contact Dr. Miller's local U.S. Department of Labor office and his state insurance regulatory agency for assistance.

This concludes the process by the Administrative Review Unit. We hope this letter has addressed all of your concerns regarding the previous decisions on Presumptive Disability under Dr. Miller's IDI claims.

If you have any questions regarding this letter or the administrative review of Dr. Miller's claim, please contact me.

**Exhibit 2 - pg. 65 of 69**

Sincerely,

Mike Dalby
Benefits Review Specialist
Administrative Review Unit
971.321.5450

Enc:    Presumptive Definitions

**Exhibit 2 - pg. 66 of 69**

Miller, Lairy, DDS          Page 6 of 8                    May 21, 2020

### Policy H1977912/Claim WA0967

**Will you be presumed disabled by certain losses?**

Yes. We will consider you disabled regardless of the income you are earning if, while this policy is in force, you suffer the total and irrecoverable loss of your:

(1)    speech; or
(2)    hearing in both ears; or
(3)    sight in both eyes; or
(4)    use of both hands; or
(5)    use of both feet; or
(6)    use of one hand and one foot.

Benefits will start when loss occurs, even if the waiting period has not expired.

### Policy C7779320/Claim WA0969:

PRESUMPTIVE TOTAL DISABILITY - Your total and permanent loss, because of Your Injury or Sickness, of one of the following:

1.    Speech;
2.    Hearing in both ears, not restorable by hearing aids;
3.    Sight in both eyes (see below);
4.    Use of both hands;
5.    Use of both feet; or
6.    Use of one hand and one foot.

Total and permanent loss of sight in both eyes means that both eyes must measure at or below 20/200, after reasonable efforts are made to correct their vision, using the most advanced medically acceptable procedures and devices available.

### Policy C9320480/Claim WA0970

PRESUMPTIVE TOTAL DISABILITY - Your total and permanent loss, because of Your Injury or Sickness, of one of the following:

1.    Speech;
2.    Hearing in both ears, not restorable by hearing aids;
3.    Sight in both eyes (see below);
4.    Use of both hands;
5.    Use of both feet; or

**Exhibit 2 - pg. 67 of 69**

6.      Use of one hand and one foot.

Total and permanent loss of sight in both eyes means: Both eyes must measure at or below 20/200, after reasonable efforts are made to correct their vision, using the most advanced medically acceptable procedures and devices available.

You will be considered as Totally Disabled if You become Presumptively Totally Disabled under the policy terms. See the Benefit for Presumptive Total Disability provision.

**CATASTROPHIC DISABILITY/ CATASTROPHICALLY DISABLED** - Because of Your Injury or Sickness:

1.      You are unable to safely and completely perform two or more Activities Of Daily Living without Hands-on Assistance or Standby Assistance due to loss of functional capacity;

2.      You require Substantial Supervision for Your health or safety due to Severe Cognitive Impairment; or

3.      You are Presumptively Totally Disabled, as described in the policy.

**BENEFIT FOR CATASTROPHIC DISABILITY** - You will be eligible for the benefit for Catastrophic Disability if:

1.      You become Catastrophically Disabled while this rider is in force; and

2.      The benefit for Total Disability is payable under the policy.

This benefit will start after the Waiting Period ends. However, if You are Presumptively Totally Disabled, benefits start on the day Your Presumptive Total Disability begins. Benefits will continue through the Maximum Benefit Period, provided that You remain eligible for this benefit according to this rider. Payment of this benefit will be in addition to any other payment that may be due under the policy or any other rider made part of the policy. We will pay this benefit monthly. The amount of this benefit is shown on the data page.

We will pay the benefit for Catastrophic Disability after We receive proof of Loss satisfactory to Us. In addition, We may terminate, defer or suspend payment of this benefit as outlined in the policy's Claims provision.

<u>**H1977909/Claim WA0966**</u>

**Will you be presumed disabled by certain losses?**

Yes. We will consider you disabled regardless of the income you are earning if, while this policy is in force, you suffer the total and irrecoverable loss of your:

**Exhibit 2 - pg. 68 of 69**

Miller, Lairy, DDS                    Page 8 of 8                    May 21, 2020

(1)    speech; or
(2)    hearing in both ears; or
(3)    sight in both eyes; or
(4)    use of both hands; or
(5)    use of both feet; or
(6)    use of one hand and one foot; or
(7)    sight in one eye and the use of one foot or of one hand.

Benefits will start when loss occurs, even if the waiting period has not expired.

**Policy H2033124/Claim WA0968**

**Will you be presumed disabled by certain losses?**

Yes. We will consider you disabled regardless of the income you are earning if, while this policy is in force, you suffer the total and irrecoverable loss of your:

(1)    speech; or
(2)    hearing in both ears; or
(3)    sight in both eyes; or
(4)    use of both hands; or
(5)    use of both feet; or
(6)    use of one hand and one foot; or
(7)    sight in one eye and the use of one foot or of one hand.

Benefits will start when loss occurs, even if the waiting period has not expired.

**Policy C9320490/Claim WA0971**

**PRESUMPTIVE TOTAL DISABILITY** - Your total and permanent loss, because of Your Injury or Sickness, of one of the following:

1.    Speech;
2.    Hearing in both ears;
3.    Sight in both eyes;
4.    Use of both hands;
5.    Use of both feet; or
6.    Use of one hand and one foot.

**Exhibit 2 - pg. 69 of 69**